**Jose VAZQUEZ–GARCIA, Plaintiff,**

v.

**TRANS UNION DE PUERTO RICO, et al., Defendants.**

**CIVIL NO. 00–2071 (DRD).**

United States District Court,
D. Puerto Rico.

Sept. 18, 2002.

Peter J. Porrata, Maritere Perez–Pascual, San Juan, PR, for Plaintiff.

Eric J. Berlingeri–Vincenti, De Corral & De Mier, Fernando J. Gierbolini–Gonzalez, Salvador Antonetti–Zequeira, Fiddler, Gonzalez & Rodriguez, Luis G. Martinez–

Llorens, Colon, Colon & Martinez, San Juan, PR, for defendants.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the Court are three (3) motions: the first two (2) were filed by defendant, Sears, Roebuck & Co. ("Sears"), to wit, a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), and another for summary judgment, filed under Fed. R.Civ.P. 56. The other motion pending is a motion to extend time to oppose Sears' motion for summary judgment, filed by plaintiff. After carefully reviewing the record, the Court hereby **DENIES** Sears' motion for summary judgment (Docket No. 60); the Court also **DENIES** Sears' motion to dismiss (Docket No. 54). Plaintiff's motion for an extension of time to file opposition is **GRANTED.** (Docket No. 61). The Court considers plaintiff's motion in opposition as submitted, at Docket Nos. 62 and 63.

### I

### FAILURE TO COMPLY WITH LOCAL RULES REGARDING SUMMARY JUDGMENT

■ At the outset, the Court denies Sears' motion for summary judgment, Docket No. 60, for failure to comply with this Court's local rules. While Sears partly complied with Local Rule 311.12, providing a "short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried," its statement is not, however, "properly supported by specific reference to the record." *See* Local Rule 311.12 (emphasis added). Even though the statement makes (specific) reference to a transcript of plaintiff's deposition, that transcript is not found in the record. The long-standing rule is that transcripts of depositions are generally not admissible as evidence, and thus, they are not usually part of the record. *See Westinghouse Electric Corp. v. Wray Equipment Corp.,* 286 F.2d 491, 493–494 (1st Cir.1961)(citing cases). Accordingly, since Sears makes reference to a transcript which is not part of the record, its Rule 311.12–statement is not "properly supported by specific reference to the record," in violation of Local Rule 311.12.

Moreover, Sears' motion for summary judgment must be denied on the basis that it also fails to comply with Local Rule 311.4. Said rule provides, in pertinent part, that "[w]hen allegations of facts not appearing on record are relied upon in support of a motion, all affidavits **and other pertinent documents** then available **shall accompany the motion."** *See* Local Rule 311.4 (emphasis added). Because the transcript of plaintiff's deposition, on which Sears relies upon in support of its motion for summary judgment does not appear on record, Sears had an obligation to file it together with its motion. Sears did not. Hence, Sears also failed to comply with Local Rule 311.4.

It is well established in this Circuit that a district court "[is] entitled to insist upon compliance with its local rule." *Corey v. Mast Road Grain & Bldg. Materials Co., Inc.,* 738 F.2d 11, 12 (1st Cir.1984); *see also United States v. Proceeds of Sale of 3,888 Pounds Atlantic Sea Scallops,* 857 F.2d 46 (1st Cir.1988). The First Circuit Court has constantly reiterated, particularly, with reference to Rule 311.12, that "parties ignore [it] at their own peril . . . ." *Ruiz Rivera v. Riley,* 209 F.3d 24, 28 (1st Cir.2000)(citing prior cases); *see also Morales v. A.C. Orssleff's EFTF,* 246 F.3d 32, 33 (1st Cir.2001)("This case is a lesson in summary judgment practice"). Furthermore, a recent First Circuit case buttresses the Court's conclusion of dismissing for failure to comply with local rules. *See NEPSK, Inc. v. Town of Houlton,* 283

F.3d 1, 5–9 (1st Cir.2002)(granting of judgment on pleadings based on plaintiff's failure to comply with local rule requiring timely response). Accordingly, since Sears' motion does not comply with either Rule 311.12 nor Rule 311.4, the Court denies its motion for summary judgment.[1]

## II

## MOTION TO DISMISS

Having denied the motion for summary judgment, the Court is left only with Sears' motion to dismiss the complaint, pursuant to fed.R.Civ.P. 12(b)(6). (Docket No. 54). Thus, the Court examines Sears' motion to dismiss.

The present complaint was originally filed against nine (9) defendants. On October 31, 2001 plaintiff filed a motion requesting voluntary dismissal, with prejudice, with respect to three defendants (Docket No. 50), which was soon thereafter granted by the Court. (Docket No. 51). Accordingly, only six (6) defendants remain in this case, namely, Trans Union de Puerto Rico, Inc.; Equifax Credit Information; GMAC; Sears; GE Plus; and Resources BK MTG Group.[2] The Court notes here that the motion to dismiss now pending before the Court was filed by Sears, and with respect to Sears only.

When deciding a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded factual claims, and indulge all

reasonable inferences in Plaintiffs' favor. *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir.1996). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate if the facts alleged, taken as true, do not justify recovery. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). In order to survive a motion to dismiss, Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Gooley v. Mobil Oil Corp.* 851 F.2d 513, 515 (1st Cir.1988). Although all inferences must be made in Plaintiffs' favor, the Court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson*, 83 F.3d at 3. Moreover, when considering a motion to dismiss under Rule 12(b)(6) the Court must limit its focus to the allegations of the complaint. *Litton Indus., Inc. v. Colon*, 587 F.2d 70, 74 (1st Cir.1978). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim ...." *Id.; see also Doyle*, 103 F.3d at 190.

## III

## FACTUAL BACKGROUND

The Court shall thus review whether dismissal is warranted, accepting as true all factual allegations within the complaint and indulging all reasonable inferences in the plaintiff's favor. *See Brown v. Hot,*

1. On the other hand, the Court notes that plaintiff's motion in opposition to summary judgment also failed to abide by Rule 311.12 (but not Rule 311.4), for similar reasons to those explained above. That is, plaintiff's motion did not provide a "short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried, properly supported by specific reference to the record."

2. The order granting partial, voluntary dismissal of the three defendants dismissed,

Docket No. 51, failed to mention co-defendant Resources BK MTG Group, as a remaining party to this case, by clerical error. The Court clarifies, however, that **BK MTG Group indeed continues to be a party to this case**, pursuant to the amended complaint. Docket No. 7. In other words, there were nine (9) original defendants; only three were dismissed, and thus six (6) remain as parties to date, not five (5), as the order incorrectly stated. Hence, the clerical error is hereby clarified and corrected.

*Sexy & Safer Prods. Inc.,* 68 F.3d 525, 530 (1st Cir.1995).

Plaintiff alleges in his complaint that, in 1999, he received a telephone call from a Sears representative at the credit department, advising him that a "Sears Charge Credit Card" registered under his name had an outstanding balance which was overdue. Surprised, plaintiff indicated that he had never applied for a Sears credit card, and, in response, suggested it was all a mistake. The next day, on August 30, 1999, plaintiff requested an updated copy of his credit report from co-defendant Trans Union de Puerto Rico, Inc. ("Trans Union"). Upon receipt of the credit report, plaintiff uncovered several strange entries in it, including an outstanding debt to Sears. It was further uncovered that a resident of the State of Nevada, born in 1960, had falsely and illegally used plaintiff's social security number, to apply for credit cards in his name. Plaintiff, of course, is a resident of Puerto Rico, not Nevada; also, he was born in 1962, not 1960.

Plaintiff therefore requested an investigation at the offices of Trans Union. After conducting an investigation, Trans Union provided plaintiff a revised credit report. This first revision, however, failed to correct the information pertaining to the outstanding debt towards Sears. Plaintiff then requested a second revision. Hence, Trans Union provided plaintiff a second revision of his credit history report. Nonetheless, this second revision still had not weeded out the misleading history. Plaintiff alleges that, to date, Trans Union has not removed the incorrect information in his credit history report. As a consequence, plaintiff's applications for several credit cards—including a credit card from Sears—have been consistently denied, his credit limit has been reduced, and his present credit history, which reflects incorrect information,

has affected his financial stability. Plaintiff alleges that Sears acted negligently when it authorized a credit card to the unnamed Nevada resident, and then when it (equivocally) sought payment from him, even though he had advised Sears of the situation. He also claims that Sears offered false information, which was furnished with willful intent to injure plaintiff. Finally, he states that due to the reasons stated above, he as suffered tremendously, both materially and mentally.

### III

### FAIR CREDIT REPORTING ACT

*A. Private Right of Action against "any person."*

In 1968, Congress enacted the Fair Credit Reporting Act (FCRA), in order to establish "reasonable procedures for meeting the [credit reporting] needs of commerce" and the banking industry in a "manner that is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy and proper utilization of such information ...." 15 U.S.C. §§ 1681, *et seq.* The FCRA was essentially prompted by "congressional concern over abuses in the credit reporting industry." *Philbin v. Trans Union Corp.,* 101 F.3d 957, 962 (3rd Cir.1996)(*quoting Guimond v. Trans Union Credit Info Co.,* 45 F.3d 1329, 1331 (9th Cir.1995)). As such, one of the main goals of the FCRA is to protect individuals from inaccurate or arbitrary information found in their credit history reports. *See Pinner v. Schmidt,* 805 F.2d 1258, 1261 (5th Cir.1986). In other words, a general purpose of the FCRA is to protect the creditworthiness and reputation of every consumer. *Ackerley v. Credit Bureau of Sheridan, Inc.,* 385 F.Supp. 658 (D.Wyo.1974).

There are essentially three types of actors which interplay in suits under the FCRA, namely, 1) consumer reporting agencies, 2) users of consumer reports,

and 3) the furnishers of information to consumer reporting agencies.[3] However, in 1996, Congress passed the Consumer Credit Reporting Reform Act, bringing forth fundamental amendments to the FCRA. Indeed, prior to September 30, 1997, cases interpreting the FCRA generally held that liability under this statute was limited to the consumer reporting agencies and users of consumer reports, for willfully or negligently violating the FCRA, but not for the entity who furnishes information to a credit reporting agency. *See, e.g., Rivera–Lebron v. Cellular One*, 13 F.Supp.2d 235, 240 (D.P.R.1998); *Alvarez Melendez v. Citibank*, 705 F.Supp. 67, 69 (D.P.R.1988). Hence, the amendments of 1996 were made in order to "provide new tools to insure that furnishers of information to consumer reporting agencies cooperate in maximizing the goal of the [FCRA] that only accurate and complete information is included in credit reports." Richard J. Rubin, "Fair Credit Reporting Act Amendments Provide New Duties on Furnishers of Information," Corporate Law and Practice Course Handbook Series, Practicing Law Institute, Vol. 4, Issue 1, p. 203 (April 1999).[4]

Pursuant to the facts of this case, plaintiff's claims against Sears have the purpose of imposing liability on Sears for "furnishing information." *See* Amended Complaint, para. 12–24, Docket No. 7. Indeed, in its motion to dismiss, Sears apparently concedes its status as a furnisher of information in this case, albeit denying any liability. *See* Motion to Dismiss, pp. 6–7 Docket No. 54.[5] Thus, the Court finds that Sears is a furnisher of information for purposes of this motion to dismiss, and accordingly, analyzes the duties the FCRA imposes on furnishers of information.

The duties imposed on furnishers of information are found in the newly-created section 1681s–2, and particularly subsections 16821s–2(a) and 16821s–2(b). The first, § 16821s–2(a), requires furnishers of information to provide accurate information to consumer reporting agencies; § 16821s–2(b), on the other hand, imposes a duty to conduct investigation and promptly report any inaccurate or incomplete information to consumer reporting agencies, upon notice of a dispute by a consumer. On that same coin, sections 1681n(c) and 1681o(b) were amended to provide for a private right or action for the consumer against "any person," including furnishers of information, for any willful noncompliance or negligent noncompliance with the FCRA. These amendments constitute a pivotal coverage and reporting improvement to the FCRA. "Before the amendments, furnishers were under no explicit federal duty to report correct information, to respond to or investigate a consumer's dispute, or cooperate with a reporting agency's reinvestigation. The amendments correct these deficiencies." *See* Rubin, "Fair Credit Reporting Act Amendments" at 205.[6]

---

3. *See, generally, Carney v. Experian Information Solutions, Inc.*, 57 F.Supp.2d 496 (W.D.Tenn.1999).

4. The revisions made by Congress, although approved in 1996, did not become effective until September 30, 1997. *See* Pub.L. 104–208, Div. A, Title II, §§ 2412(d), (e)(2), Sept. 30, 1996, 110 Stat. 3009–446.

5. A "furnisher of information" is not specifically defined in the FCRA, but case law has

"defined it as an entity 'which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies such as Experian, Equifax, MCCA, and Trans Union.'" *DiMezza v. First USA Bank Inc.*, 103 F.Supp.2d 1296, 1299 (D.N.M.2000)(*quoting Carney*, 57 F.Supp.2d at 501).

6. "Previously, consumers were often faced with a 'Catch 22,' because the furnisher, who had no liability whatsoever under the FCRA

Whether the newly-created section 1681s–2 provides for a private cause of action for consumers against furnishers of information, is a question of first impression within this district and the First Circuit. But the question has been addressed by courts in other circuits. *Cf. Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059–60 (9th Cir.2002)(section 1681–2 creates a private cause of action for consumers), *Dornhecker v. Ameritech Corp.*, 99 F.Supp.2d 918 (N.D.Ill. 2000)(same), and *Campbell v. Baldwin*, 90 F.Supp.2d 754 (E.D.Tex.2000)(same); *but see Carney v. Experian Information Solutions, Inc.*, 57 F.Supp.2d 496 (W.D.Tenn. 1999)(there is no private cause of action for consumers in the FCRA). Today, this Court sides with the majority of courts which have effectively recognized Congress' obvious intent of create a private cause of action through § 16821s–2.

Until the amendments, the FCRA did not provide an effective nor adequate mechanism for privately enforcing the statutory scheme in order to rectify continuing credit reporting errors committed by the furnishers of such information. As stated above, duties and liabilities were generally limited to the consumer reporting agencies and users of consumer reports, for willfully or negligently violating

the FCRA, but not for furnishers of information. Nonetheless, the FCRA now requires furnishers to report as "disputed" any debts which are so known by the furnisher. 15 U.S.C. § 1681s–2(a). Hence, when a consumer "disputes" a debt, the furnisher now must reinvestigate the validity of the debt and report the results of that investigation to the applicable credit reporting agencies. 15 U.S.C. § 1681s–2(b). If the investigation shows the reported information is inaccurate or incomplete, the furnisher must provide corrected information to the credit reporting agency. The furnisher of information must complete these acts within the prescribed time limit. 15 U.S.C. § 1681s–2(b)(2). The furnisher's failure to comply with these requirements subjects it to liability for statutory and actual damages, as well as the prevailing consumer's costs and attorney's fees. 15 U.S.C. § 1681o.[7] Hence, as can be seen, the new scheme has considerable implications for furnishers of information, particularly in leu of the ever-increasing social problem of identity theft.

The amended "liability sections" of the FCRA, thus, provide for liability based on willful noncompliance and negligent noncompliance with the statute; to wit: "Any person who **willfully** fails to comply with

---

for its conduct, was effectively outside the enforcement loop. Typically, reporting agencies claimed to have innocently relied on the furnisher's incorrect information, thereby leaving inaccurate information on file and neither party responsible to take meaningful corrective action. Consumer reporting agencies naturally defend FCRA suits by blaming the furnisher, whose 'empty chair' became the source of all ills. Now, with both the furnisher and the reporting agency each responsible for the accuracy of credit information, a consumer whose dispute has been ignored or mishandled and whose credit report continues to contain inaccurate or incomplete information need not fear such finger pointing. To the contrary, the furnisher and the reporting agency accusing the other of creating the

violation is an enviable prospect for the consumer, whose only practical burden then is simply to show that the information is wrong." *See* Ruben, "Fair Credit Reporting Act Amendments," p. 206.

7. In general, "[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1) any actual damages sustained by the consumer as a result of the failure;

(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court."

any requirement imposed under this subchapter with respect to any consumer is liable to that consumer," § 1681n(a) (emphasis added); and "[a]ny person who is **negligent** in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer[,]" § 1681o(a). In sum, as the FCRA stands today, failure to comply with the requirement of investigation and response by furnishers of information, provides consumers a private cause of action for FCRA non-compliance. *See DiMezza*, 103 F.Supp.2d at 1300 ("the plaint language of the [FCRA] compels the conclusion that there is a private right or action for consumers to enforce the investigation and reporting duties imposed on furnishers of information")(fully analyzing historical and statutory notes); *McMillan,* 119 F.Supp.2d at 86; *Dornhecker,* 99 F.Supp.2d 918 (N.D.Ill.2000);[8] *Campbell v. Baldwin,* 90 F.Supp.2d 754 (E.D.Tex. 2000); *but see Carney,* 57 F.Supp.2d at 502 (a consumer has no private cause of action against furnishers of information).[9]

However, it is important to note at this point that § 1681s–2(d)—which is part of the subtitle which defines the duties of furnishers of information—by its language, exclusively limits enforcement of the "accurate information" provisions found in § 1681s–2(a) to federal and state officers only, and, as such, precludes any action under the liability sections, that is, under § 1681n(a) and § 1681o(a). In its motion to dismiss, Sears has tried to suggest that this enforcement restriction is also applicable to § 1681s–2(b). But an increasing number of courts, which have construed the amended provisions pursuant to the plain-meaning analysis, have reached the contrary conclusion. *See, e.g., Campbell,* 90 F.Supp.2d at 756 (holding that individuals who violate subsection (b) of 15 U.S.C. § 1681s–2 are not exempted from civil liability); *see also Seahorse Marine Supplies, Inc. v. Puerto Rico Sun Oil Co.,* 295 F.3d 68, 74 (1st Cir.2002)(courts must give effect to the statute's plain meaning; accordingly starting point for interpretation of a statute is the language of the statute itself)(*citing Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990))(internal quotation marks omitted). The Court explains.

15 U.S.C. § 1681o.

**8.** The Court in *Dornhecker,* 99 F.Supp.2d at 926, expressly concurred with the case of *Campbell,* stating as follows: "The court concludes that the holding in *Campbell* is consistent with the directives from the Supreme Court in determining whether an implied private right of action exists as explained in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)." That Court reiterated this holding later, by expressing: "Pursuant to *Ash* and its progeny, the court concludes that individual consumers do have a private right of action against a furnisher of information **under Subsection (b) of Section 1681s–2** of the FCRA." *See id.,* at 926 (emphasis added).

**9.** As did the Court in *DiMezza,* this Court strongly disagrees with the conclusion reached in *Carney,* that a consumer has no private right of action against furnishers of information. The undersigned instead concurs with the Court in *McMillan,* which correctly noted that *Carney* was decided without the benefit of the position of all parties in that case, because there, plaintiff apparently had failed to prosecute his case, and thus did not file an opposition. The Court therefore adjudicated the motion to dismiss apparently based on defendants' legal memorandum for dismissal exclusively, and without the full benefit of full briefing on this novel issue. *See Carney,* 57 F.Supp.2d at 498, and *McMillan,* 119 F.Supp.2d at 86. Moreover, the Court in *Carney* overlooked the plain-meaning rule, in missing to discern that, by the plain language of the statute, Congress did not provide for the "enforcement limitations" with respect to § 1681s–2(b), as it expressly and specifically did with § 1681s–2(a). Thus, the undersigned also finds "baffling" the conclusions reached in *Carney. See DiMezza,* 103 F.Supp.2d at 1301.

As mentioned above, by the reform of 1996, Congress imposed two new duties on the furnishers of information, which are codified at 15 U.S.C. § 1681s–2(a) and (b).[10] The category of duties in subsection (a), relates to the duty furnishers have to report accurate information; the second category of duties, found in subsection (b), governs the furnishers' duty once notice is received from the consumer that there is a "dispute" as to the completeness or accuracy of the information provided to a consumer reporting agency. *McMillan*, 119 F.Supp.2d at 86–87. Congress, nevertheless, was careful to circumscribe the consumers right of action by excluding the provisions of subsection **(a)** from the coverage of the "liability sections," supra. As such, Congress limited the possibility of enforcement of the provisions of subsection (a) exclusively to the federal agencies, and state officials. *See* 15 U.S.C. § 1681s–2(c);[11] *see also* 15 U.S.C. § 1681s–2(d).[12]

Furthermore, in *McMillan,* the Court expressed that it is "reassuring to observe that the Court's reading of the statute's plain meaning is consistent with both the legislative history and the Federal Trade Commission's interpretation reflecting the intent that consumers can pursue a civil action against furnishers of information for violations of 15 U.S.C. § 1681s–2(b)." 119 F.Supp.2d at 88–89 (*citing* congressional reports, and correspondence from high-ranking officials from the FTC, as to the interpretation of the 1996 amendments).

Therefore, in light of the above, there can be no doubt whatsoever that, through the 1996 amendments to the FCRA, Congress expressly provided consumers with a private cause of action for willful or negligent violations of § 1681s–2(b), committed by "any person," including furnishers of information, as to inaccurate information reported in the consumer's credit history report, when such information is affirmatively "disputed" by the consumer.[13] *See*

---

**10.** "Prior to these amendments the law contained a loophole which allowed reporting agencies to blame furnishers of inaccurate credit reports and no disincentive for furnishers to update their reported data. Furnishers may not have been responsive to consumers, but there was nothing consumers could do about it, furnishers were not liable to consumers for failing to report accurately. Congress rectified this problem with section 1681s–2(a) and (b), which together require furnishers to provide accurate information and properly investigate disputed reports." John Roddy, "The Crossroads of Privacy and Credit: Class Liability Under the FCRA and FDCPA," Corporate Law and Practice Course Handbook Series, Practicing Law Institute, PLI Order No. B0–00ZV, p. 847 (April 2001).

**11.** Subsection 1681s–2(c) provides the following with respect to the "liability sections" of the FCRA: "Sections 1681n [willful noncompliance] and 1681o [negligent noncompliance] of this title do not apply to any failure to comply with subsection **(a)** of this section ...." *See* 15 U.S.C. § 1681s–2(c)(emphasis added).

**12.** "Subsection (a) of this section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials and the State officials identified in that section." 15 U.S.C. § 1681s–2(c).

**13.** With Congress' enactment of the Consumer Credit Reporting Reform Act of 1996, which became effective in September 30, 1997, the precedential value of pre–1996 case law has been significantly undermined. It is questionable whether previously leading circuit decisions, such as *DiGianni v. Stern's,* 26 F.3d 346 (2d Cir.1994), and others, are still good law. Like many other leading, important cases, *DiGianni,* for example, reiterated the rule that furnishers of information were generally not liable to consumers under the FCRA, obviously, because the new section 1681s–2 had not yet been enacted. Furthermore, the leading cases in this district, which generally echoed the furnishers'-immunity rule, likewise, are arguably subject to reevaluation, because they generally followed pre–1681s–2 case law and/or applied the pre–1996 version of the FCRA. *See, e.g., Alvarez Melendez v. Citibank,* 705 F.Supp. 67 (D.P.R.1988);

15 U.S.C. §§ 1681n(a) (willful violations) and § 1681o(a)(negligent violations). In other words, failure to comply with this investigation and response requirement gives rise to liability under the FCRA,[14] and a response which does not accurately and adequately indicate the existence of a "dispute" as to information in a customers credit report, creates liability under the FCRA.[15]

One last caveat must be made, however. Even though § 1681s–2(b) creates a private cause of action by a consumer against a furnisher of information, the consensus of the courts is that this private cause of action is not triggered until **after** the furnisher of information receives notice of the dispute **from a consumer reporting agency,** not just the consumer. *Aklagi v. Nationscredit Financial,* 196 F.Supp.2d 1186, 1192 (D.Kan.2002)(Opinion and Order from Magistrate Judge); *Hasvold v. First USA Bank,* 194 F.Supp.2d 1228, 1236 (D.Wyo. 2002); *Jaramillo v. Experian Info. Solutions, Inc.,* 155 F.Supp.2d 356, 363 (E.D.Pa.2001); *Yelder v. Credit Bureau of Montgomery, L.L.C.,* 131 F.Supp.2d 1275, 1289 (M.D.Ala.2001); *Dornhecker,* 99 F.Supp.2d at 928–29.

In the case at bar, the Court must first note that plaintiff's amended complaint does not constitute a paragon of a well pleaded complaint. Nevertheless, because the Court has an obligation to read the pleadings liberally, the Court finds that the amended pleadings contain asseverations which, if found eventually to be true, sufficiently state a claim against Sears, albeit barely, for a violation of 15 U.S.C. § 1681s–2(b). Moreover, the Court is aware that, even though plaintiff has pleaded that it notified the consumer reporting agency Trans Union, he has, nevertheless, failed to specifically pleaded that Trans Union ever complied with the duties imposed upon it by § 1681s–2(b), of providing notice of the dispute to Sears. Thus, at this stage, it is unclear whether the duties imposed on Sears were effectively triggered. *Aklagi,* 196 F.Supp.2d at 1192. However, when this information is provided to plaintiff in discovery, it will become clear whether plaintiff will be able to adequately prove his claim against Sears. At this stage, it is enough to examine the pleadings in the light most amenable to plaintiff, as the Court must do, and ascertain whether, **from the pleadings,** he has sufficiently plead a claim against Sears. In other words, it is not necessary, nor possible, for the Court to decide at this stage whether plaintiff will be able to es-

*Rivera v. Bank One,* 145 F.R.D. 614 (D.P.R. 1993); *Oppenheimer v. Guzco Guarantee de P.R.,* 977 F.Supp. 549 (D.P.R.1997); *Rivera–Lebron v. Cellular One,* 13 F.Supp.2d 235 (D.P.R.1998); *see also Melendez v. Equifax Credit,* 1997 WL 392375 (D.P.R.1997).

**14.** "The net effect is that furnishers must report only accurate and complete information and must update and correct information, yet enforcement under the Act of these provisions [*i.e.,* § 1681s–2(a) ] is limited to actions by the FTC and state [agencies]. But, once advised by the reporting agency of a consumer's dispute, the furnisher must respond with its own investigation and inform the reporting agency of the results. Furthermore, if the original information is found to be inaccurate or incomplete, the furnisher must so advise any

other reporting agency to which the original information was also furnished. Any violation of these dispute resolution provisions is subject to the private civil enforcement sections [*i.e.,* § 1681s–2(a) ]." *See* Ruben, "Fair Credit Reporting Act Amendments," pp. 206–07.

**15.** Again, the FCRA establishes a procedure which requires that the consumer dispute the report directly to the reporting agency. 15 U.S.C. § 1681i. Then the reporting agency notifies the furnisher of information about the dispute. *See* § 1681s–2(b). The FCRA then holds both the consumer reporting agency and the furnisher of information of credit responsible for investigating a disputed item and for reporting only accurate information, so as to protect a consumer's credit report.

tablish sufficient proof for his claim. Perhaps at later stages the matter will be properly before the Court, after discovery matures. Accordingly, having concluded that, as of September 30, 1997, consumers may file suits against furnishers of credit information for willfully or negligently violating the duties imposed by § 1681s–2(b),[16] the Court must at this early juncture **DENY** Sears' motion to dismiss. (Docket No. 54).

B. *Supplemental Jurisdiction Over Plaintiff's Claims: Preemption and the FCRA.*

The Court notes that plaintiff has not specifically asserted in his complaint any supplemental claim, under the laws of Puerto Rico, against Sears.[17] Notwithstanding, curiously plaintiff is requesting lawyer fees for obstinacy under Puerto Rico law; damages are also sought in the prayer. As such, the inquiry could end here. Nonetheless, the court will discuss plaintiff's local law claims in the event he is able, and in effect does, seek to amend his allegations, to at least clarify his allegations as expressed in the recent filed submissions to the Court.[18] The issue of whether the FCRA preempts any state law claim a consumer may bring against furnishers of information, is not yet as clearly settled as the issue of the FCRA's private claim against furnishers of information, under § 1681s–2(b), discussed *ante.*

From the outset, the Court notes that the 1996 amendments have added a new section that creates a statutory conflict within the FCRA, regarding preemption of state law actions. Prior to the amendments, the only provision addressing the issue of preemption of state law claims, was section 1681h(e), which has been re-

16. The Federal Trade Commission has issued a letter which interprets the amendments as expressly authorizing a private right of action and in March, 1999 created pamphlet containing the rights of consumers appropriately entitled "Fair Credit Reporting." This document straightforwardly advises consumers that they now have the right to enforce the FCRA against recalcitrant furnishers of information. In a question and answer format, said federal agency presents the issue as follows:—Consumer: "Do you have the right to sue for damages?"—FTC Response: "You may sue a Consumer Reporting Agency, a user [of information] or—in some instances—a provider of consumer reporting agency data . . . ." The FTC's interpretive letter states: "In addition, Section 623(b) [15 U.S.C. § 1681s–2(b)] imposes clear investigative duties on furnishers when they receive disputes from credit reporting agencies, and allows consumers to sue violators of this subsection to obtain damages (which may be punitive in the consumer shows willful violation) and attorney fees. Prior to the addition of Section 623 in 1996, the FCRA provided for none of these duties or liabilities on furnishers of information to CRAs." *See supra* Roddy, "The Crossroads of Privacy and Credit," at p. 848 n. 8.

17. The Court notes, however, that in his Memorandum in Opposition to the motion to dismiss, he argue that Sears acted with malice and willful intent to injure him, under 15 U.S.C. § 1681(h). He states that "Sears threatened Plaintiff during the procedures of collection, after receiving notice from Defendant Trans Union, they failed to correct the credit report and continue to report false information regarding Plaintiff's credit even though they new [sic] it was false. Therefore, their willful intent to damage Plaintiff's credit history is more than obvious." *See* Docket No. 58, p. 4.

18. The Court so acts to prevent the parties from having to re-argue motions to dismiss the state law claims, assuming plaintiff amends its pleadings, under FED.R.CIV.P. 15. The Court finds this is justified inasmuch this case was filed in August of 2000, and is still at the motion-to-dismiss stage. In trying to avoid any needless postponements, the Court is simply administering this matter in a manner that assures "the just, speedy, and inexpensive determination of every action." FED.R.CIV.P. 1. *See, e.g., Dornhecker,* 99 F.Supp.2d at 930 (2000), where the Court proceeded in this same manner, in light of the fact that this is a novel issue, under the FCRA.

tained as the original provision stating the conditions under which furnishers of information are subject to suit under state law. Through that section, Congress specifically pre-empted all state law actions against the furnishers of information which are "in the nature of defamation, invasion of privacy, or negligence . . . except as to false information furnished with malice or willful intent [to] injure [the] consumer." *See* § 1681h(e). Accordingly, pursuant to the plain meaning of the statue, such claims, **when based on mere negligence,** were pre-empted. *See, e.g., Elliott v. TRW Inc.,* 889 F.Supp. 960 (N.D.Tex.1995)(FCRA preempted cause of action for defamation against credit reporting agency, where consumer never alleged that his damages were the result of malice towards, or of willful intent to injure, the consumer).

Nonetheless, through the Consumer Credit Reporting Reform Act of 1996, Congress added a new section, which clashes with the original preemption provisions of § 1681h(e). That section provides, in relevant part, that:

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply (i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws . . .; (ii) with respect to section 1785.25(a) of the California Civil Code . . . .

15 U.S.C. § 1681t(b)(1)(F). This section has created some confusion among the courts interpreting the amendments to the FCRA because, from its face, appears to be in direct conflict with the original pre-emption provisions of § 1681h(e). This statutory conflict has been adequately explained as follows:

> [T]he amendments add a new section that promises to confuse all concerned until authoritatively interpreted by the courts or perhaps the FTC. . . . On its face, [the new section 1681t(b)(1)(F) ] appears to pre-empt all state claims, other than the referenced Massachusetts and California statutes, as applied to furnishers.

Nevertheless, it is difficult, if not impossible, to reconcile this provision with Sec. 1681h(e), the negligence versus malice/willful intent subsection. If [the new] Sec. 1681t(b)(1)(F) is the complete bar that it purports to be, then the portion of Sec. 1681h(3) which pre-empts state claims based on negligence but explicitly retains those founded on the higher level of culpability is a nullity. If Congress truly intended to pre-empt all such state law claims against furnishers, then it should have deleted from Sec. 1681h(e) its coverage of "any person who furnishes information to a consumer reporting agency" when it adopted Sec. 2E 1681(b)(1)(F). Instead, the FCRA now contains two state law preemption provisions applicable to furnishers, one blanket and the other significantly narrower and more precise.

If [the original] Sec. 1681h(e) and [the new] Sec. 1681t(b)(1)(F) cannot be reconciled, the narrower standards of Sec. 1681h(e) should prevail. In addition to the general rules of construction to resolve such ambiguous enactments, principles of federalism, with their presumptive deference to state law, impose a high standard to support preemption, which must rest on the "clear manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). This threshold is undermined by the type of mixed messages conveyed by Sec. 1681h(e) and Sec. 1681t(b)(1)(F).

*See* Rubin, "Fair Credit Reporting Act Amendments," at. pp. 207–08.

It is clear from above that the new § 1681t(b)(1)(F) provides furnishers of information with what amounts to be absolute immunity from state law claims, while the original § 1681h(e) afforded furnishers of information with only qualified immunity. Also clear is the conflict these two statutory provisions apparently create. A few courts analyzing this issue have held that the new section created by Congress, § 1681t(b)(1)(F), has **completely** preempted **all** state causes of action, and, thus, also eliminating any possibility of supplemental claims under local law, in these type of cases (save, of course, with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws and to section 1785.25(a) of the California Civil Code). *See, e.g., Hasvold,* 194 F.Supp.2d at 1239 (dismissing state claims because "federal law under the FCRA preempts plaintiff's claims against the defendant relating to it as a furnisher of information"); *Jaramillo,* 155 F.Supp.2d at 362 ("The plain language of section 1681t(b)(1)(F) clearly eliminated all state causes of action against furnishers or information, not just ones that stem from statutes that relate specifically to credit reporting. To allow causes of action under state statutes that do not specifically refer to credit reporting, but to bar those that do, would defy the Congressional rationale for the elimination of state causes of action"). These opinions seem to interpret the new § 1681t(b)(1)(F) as rendering superfluous the original § 1681h(e). Because the new section establishes absolute immunity, as opposed to the original section which granted furnishers qualified immunity, the interpretation of the court's in the above-cited cases seems to be that Congress intended to completely pre-empt all state causes of action, thus nullifying the original section.

This Court, however, has an inescapable obligation to give effect to both the original § 1681h(e) and the new § 1681t(b)(1)(F) and to avoid any construction that nullifies one section or causes it to be superfluous. "A statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void or insignificant." *See United States v. Campos–Serrano,* 404 U.S. 293, 301 n. 14, 92 S.Ct. 471, 476 n. 14, 30 L.Ed.2d 457 (1971); *United States v. Holmquist,* 36 F.3d 154, 160 (1st Cir. 1994)(same). Moreover, in *United States v. Ramirez–Ferrer,* 82 F.3d 1131, 1137–38 (1st Cir.1996), the First Circuit reiterated that courts are bound to the "whole act" approach of interpreting statutes, which requires "that all provisions and other features of the enactment ... be given force, and provisions ... be interpreted so as not to derogate from the force of other provisions and features of the whole statute." Thus, the Court must give force to both the original § 1681h(e) and the new § 1681t(b)(1)(F), in a manner that they are not made void. The Court has examined relevant case law and finds the recently published opinion in the case of *Aklagi,* 196 F.Supp.2d 1186, to be on-point, since, for all practical purposes, it applied a "whole act" approach when interpreting this preemption issue. Notwithstanding some significant differences that case has with the present one, the Court finds *Aklagi's* analysis on the preemption issue to be extremely accurate and persuasive.

In *Aklagi* several victims of identity theft sued a lender, for negligently extending a mortgage loan to the identity-thief. Their suit was premised under the FCRA as well as under a state law defamation claim. Facing *brevis* disposition, the court dismissed the victims' claims under the FCRA for they failed to carry their evidentiary burden pursuant to Fed.R.Civ.P. 56 of making "the critical link between the consumer reporting agencies and [the furnisher of information]." *See Aklagi,* 196 F.Supp.2d at 1193 (liability of furnisher is

triggered "only after the furnisher receives notice of dispute *from [the] consumer reporting agency*, not just the consumer"). Then the court proceeded to analyze the possible preemption of the victims' state law defamation claim against the furnisher of information.

■ In differentiating the FCRA's original § 1681h(e) and the new § 1681t(b)(1)(F), the Court noted at the outset that these sections address "two discrete time periods." *Aklagi*, 196 F.Supp.2d at 1194. The first period time period begins at the moment of the occurrence of the identity theft which causes the inaccuracy in the victim's credit report, and ends when notice of the dispute is received by the consumer reporting agency. This first period—*Aklagi* explains—is strictly covered by the FCRA's original § 1681h(e) only. This section, as stated before, provides only **qualified immunity** for the furnishers of information which may be sued. This is so because this section provides that "[n]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence ... against ... any person who furnished information to a consumer reporting agency ... **except as to false information furnished with malice or willful intent to injure each consumer.**" § 1681h(e)(emphasis added). Accordingly, state law claims are preempted against the furnisher—in this case, Sears—by section 1681h(e), inasmuch as it is alleged that Sears was **negligent.** Only if it were claimed and proved that Sears acted "with malice or willful intent to injure" [19] when approving the loans to the identity thief, and at any time **before** Trans Union received notice of the plaintiff's dispute, may a state claim be plausible. *See Aklagi*, 196 F.Supp.2d at 1196.

■ The second time period, on the other hand, commences **after** the consumer reporting agency receives notice of the consumer's dispute. Any state law claims made as to acts occurred **after** the consumer reporting agency receives notice of the consumer's dispute is covered by section 1681s–2. And because § 1681t(b)(1)(F) specifically provides for **absolute immunity** "with respect to any matter regulated by section 1681s–2 ... relating to the responsibilities of persons who furnish information to consumer reporting agencies," **all** state law claims against the furnisher for acts occurred **after** the consumer reporting agency receives notice of the consumer's dispute, are totally pre-empted by the FCRA. In other words, to the extent that Sears may have furnished inaccurate information **after** receiving notice of plaintiff's dispute, any state law claim by plaintiff for said act is pre-empted by federal law. *See Aklagi*, 196 F.Supp.2d at 1194–95.

As noted before, in his Memorandum in Opposition to the motion to dismiss, plaintiff has alleged that Sears acted with malice and willful intent to injure him, under 15 U.S.C. § 1681(h). He states that "Sears threatened Plaintiff during the procedures of collection, after receiving notice from Defendant Trans Union, they failed to correct the credit report and continue to report false information regarding Plaintiff's credit even though they new [sic] it was false. Therefore, their willful intent to damage Plaintiff's credit history is more than obvious.... Defendant's actions in providing false information to credit reporting agencies was grossly negligent and malicious." *See* Docket No. 58, p. 4. At another place he also claims Sears acted **negligently** when approving a credit card

---

19. For a discussion of what may constitute "malice or willful intent to injure," see *Aklagi*, 196 F.Supp.2d at 1195–96; *Dornhecker*, 99 F.Supp.2d at 931; *Bruce*, 103 F.Supp.2d at 1145–46.

to the identity thief from Nevada: "Sears [sic] liability arises from the grossly [sic] negligence of authorizing a credit card to another person using Plaintiff' social security number, the[n] failed to review Plaintiff's identity, they even threatened Plaintiff telling him he would be sued if the debt was not paid, a debt that he hasn't paid." *Id.* at 5. The Court notes, however, that these allegations are not found in the complaint, only in plaintiff's motion to oppose the requested dismissal. Nonetheless, assuming *arguendo* his complaint is amended to include these allegations, Sears would be immune from state law claims, arising out of all acts occurred after plaintiff notified Trans Union of his dispute. Plaintiff provided notice of his dispute to Trans Union on August 30, 1999. Thus, pursuant to § 1681t(b)(1)(F), Sears would be completely immune from state law claims arising out of all acts occurred after August 30, 1999. This is so because § 1681t(b)(1)(F) specifically provides for **absolute immunity** "with respect to any matter regulated by section 1681s–2 ... relating to the responsibilities of persons who furnish information to consumer reporting agencies," **all** state law claims against the furnisher for acts occurred **after** the consumer reporting agency receives notice of the consumer's dispute. *See Aklagi,* 196 F.Supp.2d at 1194–95.

On the other hand, plaintiff may state a local law claim against Sears only if he can prove that Sears acted "with malice or willful intent to injure" when approving the loans to the identity thief, and for any other act occurred **before** Trans Union **received notice of the plaintiff's dispute** (August 30, 1999). *See Aklagi,* 196 F.Supp.2d at 1196. But because the only extra-official claims made by plaintiff (*i.e.,* made in his motion in opposition, not the complaint) are to the effect that Sears acted **grossly negligent** when approving a credit card to the identity thief from Nevada ("Sears [sic] liability arises from the **grossly [sic] negligence** of authorizing a credit card to another person using Plaintiff' social security number, [and] failed to review Plaintiff's identity ...."), this allegation would also be pre-empted, under § 1681h(e). They would be pre-empted because he has never alleged Sears acted "willfully" or with "malice," and they did not pertain to acts occurred **before** August 30, 1999. Rather, plaintiff's allegations are with respect to acts occurred **after** said date, and additionally, the allegations are **not** found in the complaint, but were made in a motion to oppose defendant's motion to dismiss. Sears has qualified immunity as to the state law claims that Sears acted "grossly negligent," inasmuch as § 1681h(e) expressly provides that "[n]o consumer may bring **any action** or proceeding in the nature of defamation, invasion of privacy, or **negligence** ... against ... any person who furnished information to a consumer reporting agency ...." *See Aklagi,* 196 F.Supp.2d at 1196. If plaintiff is capable to prove that Sears acted "willfully" or with "malice," with respect to acts occurred before August 30, 1999, a state law claim would certainly be plausible, since they would not be pre-empted by the FCRA.[20]

---

**20.** For example, "a state law claim would be plausible against Sears, under article 1802 of Puerto Rico's Civil Code, 31 P.R. STAT. ANN., § 5141, **as long as the acts occurred before August 30, 1999, and as long as the acts were malicious and willfully.**" *See Aklagi,* 196 F.Supp.2d at 1196. Article 1802 is Puerto Rico's tort statute, which provides in relevant part that, "[a] person who by an act or omission causes damage to another **through fault** or negligence shall be obliged to repair the damage so done." *Id.* (emphasis added). The Court makes this distinction because in *Torres Maldonado v. J.C. Penney Company,* 130 D.P.R. 546, 1992 P.R. Trans. 755, 1992 WL 755636, the Supreme Court of Puerto Rico analyzed the preemption issue under the FCRA, **albeit under the pre-amend-**

## IV

### CONCLUSION

For the reasons stated before, the Court hereby **DENIES** Sears' motion for summary judgment (Docket No. 60), and further **DENIES** Sears' motion to dismiss (Docket No. 54). Plaintiff's motion for an extension of time has thus been rendered **MOOT.** (Docket No. 61).

**IT IS SO ORDERED.**

ed version of the **FCRA,** and held that notwithstanding, local tort claims were actionable for **mere negligence.** *Id.* at 559, 1992 WL 755636.

In *Torres Maldonado,* the Court held that state law actions against the furnishers of information were not pre-empted, and thus local tort claims against furnishers of information were entirely plausible, because the FCRA only applied with respect to consumer reporting agencies and users of consumer reports. *Id.* at 558, 1992 WL 755636. Furthermore, the Court held that consumers did not have to prove "willfulness or malice" for such claims under article 1802, because proving mere negligence was sufficient. *Id.* at 559, 1992 WL 755636. These conclusions are dramatically opposite to the holdings of the majority of federal courts and specialized publications of the consumer credit authorities on the preemption issue explained in this opinion. The analysis and conclusion of the Supreme Court overstates local law and understates federal preemption principles, in light of a plain reading the provisions of the FCRA (pre–1996 **and** post–1996), and particularly now in light of the new section 1681t(b)(1)(F), as interpreted by recent federal case law. *Cf. Aklagi,* 196 F.Supp.2d at 1194–96 (absolute immunity and preemption of local claims as to furnisher's conduct after notification of dis-

pute; qualified immunity and preemption as to local claims with respect to furnisher's prenotice, willful and malicious conduct in reporting information about loan to consumer reporting agencies); *see also, generally, Hasvold,* 194 F.Supp.2d at 1239 (dismissing state claims because "federal law under the FCRA preempts plaintiff's claims against the defendant relating to it as a furnisher of information"); *Jaramillo,* 155 F.Supp.2d at 362 ("The plain language of section 1681t(b)(1)(F) clearly eliminated all state causes of action against furnishers or information, not just ones that stem from statutes that relate specifically to credit reporting. To allow causes of action under state statutes that do not specifically refer to credit reporting, but to bar those that do, would defy the Congressional rationale for the elimination of state causes of action"). The holding of the Supreme Court of Puerto Rico in *Torres Maldonado* failed to recognize the partial preemption provided by § 1681h(e), which would require "willfulness" and "malice" for local tort claims under article 1802 of Puerto Rico's Civil Code. And provided *Torres Maldonado* was decided prior to the 1996 amendments, it obviously could not have recognized total preemption under the plain language of new section 1681t(b)(1)(F); and the recent federal authorities on this subject matter.