**Nurul ISLAM and Nilufa Islam, Plaintiffs,**

v.

**OPTION ONE MORTGAGE CORP., Defendant.**

**Civil Action No. 05–12175–WGY.**

United States District Court,
D. Massachusetts.

May 5, 2006.

---

Jeffrey S. Beeler, Heinlein & Beeler, PC, South Natick, MA, for Plaintiffs.

Lisa A. Tenerowicz, Michael L. Chinitz, Rose & Associates, Boston, MA, for Defendant.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

## I. INTRODUCTION

This action, brought by the plaintiffs Nurul and Nilufa Islam (collectively, "the Islams") against the defendant Option One Mortgage Corp. ("Option One"), arises in the aftermath of the Islams' refinancing of their home and paying-off the mortgage held by Option One. According to the Complaint, Notice of Removal [Doc. No. 1], Ex. 1 ("Compl."), the final payment to Option One was untimely credited and, as a result, Option One undertook aggressive collection efforts and made false reports to credit reporting agencies.

### A. Procedural Posture

The Islams originally filed their eleven-count complaint in the Massachusetts Superior Court sitting in and for the County of Essex on August 25, 2005. *See* Compl. at 1. Option One removed the case to this Court on October 31, 2005, *see* Notice of Removal at 1, and immediately moved to dismiss the complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Mot. to Dismiss [Doc. No. 2]. The motion also requested that certain allegations be stricken from the complaint pursuant to Rule 12(f). *Id.*

### B. Standard of Review

A court may grant a motion to dismiss for failure to state a claim "only if it appears that upon any set of facts which may be inferred from the complaint[,] the plaintiff will be unable to recover." *Gibbs v. SLM Corp.*, 336 F.Supp.2d 1, 7 (D.Mass. 2004) (Saris, J.). "The complaint will survive as long as it pleads sufficient facts to warrant recovery on any cognizable theory of the case." *Tompkins v. United Healthcare of New England, Inc.*, 203 F.3d 90, 93 (1st Cir.2000). In construing the complaint, "all reasonable inferences from properly pleaded facts are to be drawn in the plaintiff['s] favor." *Roma Constr. Co. v. aRusso*, 96 F.3d 566, 568 (1st Cir.1996).

### C. Federal Jurisdiction

This Court has jurisdiction under Title 28, Sections 1332 and 1441 of the United States Code (diversity and removal, respectively). The Islams are citizens of Massachusetts and Option One is a California corporation with its principal place of business in Irvine. Compl. ¶¶ 1–3. The Islams claim $2,000,000 in damages. Notice of Removal, Ex. 2.

### D. Facts[1]

The Islams are residents of Andover, Massachusetts. Compl. ¶¶ 1–2. In 2003, Option One held the mortgage on the Islams' property in Andover. Compl. ¶ 5. In December of 2003 the Islams refinanced

---

1. These facts are taken from the Complaint. For purposes of this motion, all facts pleaded are taken as true. *See Arturet Velez v. R.J.* *Reynolds Tobacco Co.*, 429 F.3d 10, 13 (1st Cir.2005).

their mortgage with a different company. Compl. ¶ 6. That agreement was closed on December 24, 2003, and Option One received the full payoff amount on the original mortgage on December 31, 2003. Compl. ¶¶ 7–8.

By January 13, 2004—two weeks later—Option One had not yet credited the Islams' account or updated their credit report. Compl. ¶ 9. Mr. Islam contacted Option One about the problem and was told that it would be rectified within the next few days. Compl. ¶ 10. He told Option One to ensure that the payment was posted by January 16, the next due date. Compl. ¶ 11.

Nearly a week later, on January 21, 2004, a representative of Option One contacted Mr. Islam and demanded the January mortgage payment. Compl. ¶ 12. There apparently was no record of Mr. Islam's previous phone call. Compl. ¶ 13. The next day, Mr. Islam contacted Option One and spoke with two representatives who "were quite rude . . . while continuing to demand payment for January." Compl. ¶¶ 14–15. Both representatives threatened to foreclose on the Islams' home. Compl. ¶ 16.

Thereafter, Option One "continued to harass Mr. Islam by refusing to investigate" whether the payoff had been received and insisted that anything that was sent "must have been empty." Compl. ¶ 17. Mr. Islam contacted Option One once again before the payoff amount was credited. Compl. ¶¶ 18–19. Mr. Islam did not know that it finally had been credited, however, until several weeks—and several phone calls—later. Compl. ¶ 20. He requested written explanation as to what had gone wrong and what had been done to resolve it, but never received any response. Compl. ¶¶ 21–22. Mr. Islam then exchanged several letters and phone calls with Option One's senior counsel, Robert

C. Chaffin. Compl. ¶ 23. During one of these conversations, Mr. Chaffin "made inappropriate and discriminatory remarks relative to Mr. Islam's national origin." Compl. ¶ 24.

Option One failed to inform the credit reporting agencies until April of 2005—over one year later—that the Islams' mortgage had been paid in full. Compl. ¶ 25. As a result, the Islams were denied credit on two occasions. Compl. ¶ 26. Moreover, the Islams "suffered emotional and psychological harm, incurred medical expenses, lost enjoyment of life, and [caused] economic harm." Compl. ¶¶ 30, 42, 51.

## II. DISCUSSION

The Islams have brought a total of eleven causes of action related to the events alleged above. Ten of these are twinned claims, one for each of the Islams individually. The Islams allege violation of Massachusetts General Laws Chapter 93, Section 54A; negligence; negligent infliction of emotional distress; violation of Massachusetts General Laws Chapter 93, Section 49; violation of Title 940, Section 7.07(2) of the Code of Massachusetts Regulations; and violation of Massachusetts General Laws Chapter 93A. Each claim will be addressed in turn.

### A. Massachusetts General Laws Chapter 93, Section 54A

Chapter 93, Section 54A of the Massachusetts General Laws provides that

(a) Every person who furnishes information to a consumer reporting agency shall follow reasonable procedures to ensure that the information reported to a consumer reporting agency is accurate and complete. No person may provide information to a consumer reporting agency if such person knows or has reasonable cause to believe such information is not accurate or complete.

. . .

(g) A person who furnishes information to a consumer reporting agency shall be liable for failure to comply with the provisions of this section. . . .

The Islams allege that Option One violated this statute by incorrectly informing credit agencies that their mortgage had not been paid when, in fact, it had been, and also by failing to correct the reported delinquency upon notice that the report was incorrect. Compl. ¶¶ 37–39, 58–60 (Counts IV and X). This allegation would be quite sufficient to allow these claims to survive a routine motion to dismiss.

Option One argues, however, that these claims are preempted by the federal Fair Credit Reporting Act (the "FCRA"). 15 U.S.C. § 1681 *et seq.* The FCRA establishes an elaborate regulatory structure governing credit reporting. Most relevant here, it imposes duties upon the commercial furnishers of information to credit reporting agencies. These duties are set out in Section 1681s–2 and are divided into two subsections. Subsection (a) establishes the general duty to "provide accurate in-

formation", *id.* § 1681s–2(a)—including a duty to correct and update information, *id.* § 1681s–2(a)(2); to provide notice of a dispute, *id.* § 1681s–2(a)(3); to provide notice of closed accounts, *id.* § 1681s–2(a)(4); and to investigate and report on any disputed information, *id.* § 1681s–2 (a)(8)(E). Subsection (b) sets out the duties "upon notice of [a] dispute" from a credit reporting agency, including the duty to investigate and to report the result.[2] *Id.* § 1681s–2(b).

Enforcement of these provisions is somewhat complicated. The FCRA provides two individual rights of action: willful noncompliance, *id.* § 1681n, and negligent noncompliance, *id.* § 1681o. These private rights of action, however, are limited to violations of Subsection (b) (postnotice duties) and are explicitly precluded from use in enforcing Subsection (a) (general duties). *Id.* § 1681s–2(c). Instead, Subsection (a) is to be enforced by federal and state officials. *Id.* § 1681s–2(d); *Gordon v. Greenpoint Credit,* 266 F.Supp.2d 1007, 1009–10 (S.D.Iowa 2003) (Pratt, J.).[3]

**2.** It is fairly clear that these duties do not arise under the statute until a furnisher of information has been notified of a dispute *by a credit reporting agency. See Dornhecker v. Ameritech Corp.,* 99 F.Supp.2d 918, 928–29 (N.D.Ill.2000). Nothing of the sort is alleged in the Islams' complaint.

**3.** Judge Pratt has explained the rationale of the enforcement structure:

[T]he FCRA . . . imparts the duty to provide accurate information with furnishers of information. To prevent the glut of cases in the federal courts that would result if every consumer could sue anytime he or she disputed the accuracy of furnished information, Congress wisely limited enforcement of this section [ 15 U.S.C. § 1681s–2(a) ] to government agencies.

Simply stating that furnishers of information have a duty to provide accurate information, however, cannot prevent the occurrence of error. Accordingly, the FCRA imparts a second duty to furnishers of in-

formation, the duty to investigate disputed information once notified of the dispute by the credit reporting agency. The FCRA further mandates that the credit reporting agencies are to be an integral part of this investigation process. . . . [R]equiring an investigation is no guarantee that errors will be corrected. In such a case, just as it is unreasonable to expect a credit reporting agency to verify the accuracy of every piece of furnished information, it is equally—if not more so—unreasonable to ask the credit reporting agency to undergo the burden and expense of bringing a federal action each and every time a consumer is unsatisfied with the results of an investigation. Under this scenario, protection of the consumer's rights is left to the credit reporting agency, who in turn would be forced to take on the role of a de facto attorney general with only the threat of suit as motivation. One can hardly expect such a scheme to protect the rights of the consumer.

So far, so good. But the Islams do not bring a claim under the FCRA. Instead they bring only state-law claims, including ones based on Section 54A. Not to fear. The FCRA has much to say on this as well. Section 1681t begins by stating that

[e]xcept as provided ..., this subchapter *does not annul, alter, affect, or exempt* any person subject to the provisions of this subchapter[, including 1681s–2,] from complying with the laws of any State with respect to the collection, distribution, or use of any information to consumers, ... except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.

15 U.S.C. § 1681t(a) (emphasis added). The Section goes on, however, explicitly to preempt all state laws in the areas covered by Section 1681s–2:

No requirement or prohibition may be imposed under the laws of any State—

(1) with respect to any subject matter regulated under—

...

(F) section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies....

Instead of compelling a credit reporting agency to act as an attorney general on behalf of all consumers, the FCRA provides that a consumer may hold any person liable for failing to comply with any of the Act's requirements. A consumer who is dissatisfied with the results—or lack thereof—of the investigation undertaken by a furnisher of information may, therefore, protect his or her rights by filing a private cause of action against the furnisher of information in federal court. By creating this private cause of action against a furnisher of information, § 1681 s–2(b) of the FCRA protects the credit reporting agency that has followed reasonable procedures designed to ensure the maximum possible accuracy of reported information by relieving the agen-

*Id.* § 1681t(b). Finally, though, the statute concludes in relevant part that

this paragraph [15 U.S.C. § 1681t(b)(1)(F) ] shall not apply—

(i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws....

*Id.* § 1681t(b)(1)(F).[4] Thus, on the face of it, it would appear that the Islams' 54A claims are saved from preemption: The statute begins with a general presumption of non-preemption, then provides an exception to the general rule by preempting state laws regarding the duties of furnishers of credit information, and finishes with an exception to the exception for Massachusetts General Laws Chapter 93, Section 54A. Yet this does not end the necessary analysis.

In *Gibbs v. SLM Corporation,* 336 F.Supp.2d 1 (D.Mass.2004), Judge Saris, adopting the recommendation of Magistrate Judge Dein, ruled that

the FCRA ... did not exempt from its provisions Mass. Gen. Laws ch. 93, § 54A(g), which creates a cause of action for providing false information.... Where, as here, the FCRA does not exempt the state law provision expressly authorizing a private cause of action,

cy of the threat of litigation by an injured consumer and the burden of litigating the rights of all consumers. As well, allowing a consumer to bring a private cause of action against a furnisher of information when the furnisher has failed to adequately investigate disputed information ensures that the injured party, the consumer, maintains the power to protect his or her individual rights.

*Gordon,* 266 F.Supp.2d at 1011–12 (citations omitted).

4. A similar exception was given for Section 1785.25(a) of the California Civil Code. 15 U.S.C. § 1681t(b)(1)(F)(ii).

such private causes of action remain preempted.

*Id.* at 13. As a technical matter, this is certainly true. On appeal, the First Circuit did not undertake an exhaustive—or even limited—review of Section 1681t(b)(1)(F), but did issue a summary ruling which affirmed the district court in *Gibbs* "essentially for the reasons stated in its published opinion...." *Gibbs v. SLM Corp.*, No. 05–1057, Judgment (1st Cir. Aug. 23, 2005).[5] The district court in *Gibbs* did not, however, seek to explain the apparent disparity between Congress expressly excepting from preemption that portion of the Massachusetts statute creating a duty and nevertheless not excepting the portion creating liability. *See Gibbs*, 336 F.Supp.2d at 13.

Its opinion, however, did cite *Hasvold v. First USA Bank, N.A.*, 194 F.Supp.2d 1228 (D.Wyo.2002), which analyzed an analogous provision in California law—the only other state law exempted in Section 1681t(b)(1)(F). That court hinted at a possible explanation. After similarly concluding that the private right of action provided in the California code was preempted, court said that "[t]his conclusion is consistent with the expressed intent of Congress to have the conduct of furnishers of information regulated exclusively by *governmental* agencies." 194 F.Supp. at 1235 (emphasis added) (quoting *Quigley v. Pennsylvania Higher Educ. Assistance Agency*, No. C00–1661CRB, 2000 WL 1721069, at *3 (N.D.Cal. Nov. 8, 2000)); *see also Gorman v. Wolpoff Abramson, LLP*, 370 F.Supp.2d 1005, 1010–11

---

**5.** First Circuit Local Rule 32.3(a)(2) provides:

> Citation of an unpublished opinion of this court is disfavored. Such an opinion may be cited only if (1) the party believes that the opinion persuasively addresses a material issue in the appeal; and (2) there is no published opinion from this court that adequately addresses the issue. The court will consider such opinions for their persuasive value but not as binding precedent.

The prudence—if not constitutionality—of such a rule has been the topic of considerable discussion. *Compare Anastasoff v. United States*, 223 F.3d 898, 899–905 (8th Cir.2000) (holding that local rule stating that unpublished opinions are not precedent was unconstitutional), *vacated as moot* 235 F.3d 1054 (8th Cir.2000) (en banc), *with Hart v. Massanari*, 266 F.3d 1155 (9th Cir.2001) (Kozinski, J.) (holding similar rule constitutional); *Symbol Techs., Inc. v. Lemelson Med.*, 277 F.3d 1361, 1366–68 (Fed.Cir.2002) (same); *see also* Richard S. Arnold, *Unpublished Opinions: A Comment*, 1 J.App. Prac. & Process 219 (1999); Stephen R. Barnett, *In Support of Proposed Federal Rule 32.1: A Reply to Judge Alex Kozinski*, Fed. Law. Nov./Dec.2004, at 32; Anne Coyle, Note, *A Modest Reform: The New Rule 32.1 Permitting Citation to Unpublished Opinions in Federal Courts of Appeals*, 72 Fordham L.Rev. 2471 (2004); Lawrence J.

Fox, Note, *Those Unpublished Opinions: An Appropriate Expedience or an Abdication of Responsibility*, 32 Hofstra L.Rev. 1215 (2004); Hon. Alex Kozinski, Letter, Fed. Law., June 2004, at 37; Gary Young, *Cite, Publish or Perish?*, Nat'l L.J., May 3, 2004, at S1.

This Court, in the past, has found the reasoning of *Anastasoff* "especially compelling" and, despite the First Circuit's rule, treated unpublished opinions of that court "with great care and respect". *Alshrafi v. American Airlines, Inc.*, 321 F.Supp.2d 150, 159 n. 9 (D.Mass.2004); *see also Putnam v. Town of Saugus, Mass.*, 365 F.Supp.2d 151, 181 n. 17 (D.Mass.2005); *Coggon v. Barnhart*, 354 F.Supp.2d 40, 51 n. 4 (D.Mass.2005); *Corrigan v. Barnhart*, 352 F.Supp.2d 32, 43 n. 3 (D.Mass.2004). The Supreme Court recently promulgated an amendment to Federal Rule of Appellate Procedure 32.1, which will allow citation to unpublished opinions released on or after January 1, 2007. *See* Pending Rules Amendments, *at* http://www.uscourts.gov/rules/newrules6.html. The amendment will take effect December 1, 2006 unless Congress, pursuant to the Rules Enabling Act, votes to prevent it. This Court, in full and welcome embrace of the new rule and the principles it implicitly recognizes, will continue to give unpublished opinions of the First Circuit—no matter when issued—"great care and respect".

(N.D.Cal.2005) ("[T]he proper parties to pursue such liability are Federal *and State* officials." (emphasis added)); *DiMezza v. First USA Bank, Inc.*, 103 F.Supp.2d 1296, 1299 (D.N.M.2000) (stating that enforcement of these duties is "exclusively limit[ed]" to "federal *and state* officers" (emphasis added)).[6] No court has cited any er laws if they choose to do so. I think that 8 years is long enough to foster national uniformity, but not too long to stifle State ingenuity." *Id.* (statement of Rep. McCandles).

No mention was made why only Massachusetts General Law Chapter 93, Section 54A and the analogous California statute were excepted from preemption. (Perhaps because Representatives Kennedy of Massachusetts and McCandles of California were the bill's sponsors?) With respect to the California exception, one court has reasoned it thus:

> The state of California was first to impose duties and obligations on a person who furnishes consumer credit information. California enacted [its provision] on August 2, 1993. Three years later, in 1996, Congress enacted a similar provision in FCRA § 1681 s–2(a). In enacting the provision regarding furnishers of consumer credit information, Congress found that the specific language contained in [California's provision] is not inconsistent with its FCRA counterpart in § 1681 s–2(a), and thus did not preempt the California provision.

*Lin v. Universal Card Servs. Corp.*, 238 F.Supp.2d 1147, 1152 (N.D.Cal.2002). Maybe it was similar with Massachusetts's Section 54A.

Regardless, in 2003 Congress repealed the eight-year sunset provision of Section 1681t. Pub.L. No. 108–159, 117 Stat. 1952, 2011 (2003). The desire for uniformity again seemed to be the main concern:

> Section 711 [of the 2003 amendments] eliminates the January 1, 2004 sunset of the uniform national consumer protection standards contained in current law and makes those preemptions permanent.... Under this new preemption provision, no state or local jurisdiction may add to, alter, or affect the rules established by the statute or regulations thereunder in any of these areas. All of the statutory and regulatory provisions establishing rules and requirements governing the conduct of any person in these specified areas are governed solely by federal law[,] and any State action that attempts to impose requirements or prohibitions in these areas would be preempted.

6. The legislative history on preemption is somewhat complicated. In 1996, as part of the Omnibus Consolidated Appropriations Act, Pub.L. No. 104–208, 110 Stat. 3009 (1996), Congress amended portions of the FCRA. Among these amendments was what became Section 1681s–2—duties of furnishers of information, 110 Stat. 3009–447–49—and Section 1681t(b)—preemption of state law and exceptions, 110 Stat. 3009–452–54. As part of these original preemption provisions, Congress allowed that preemption would not apply "to any provision of State law ... enacted after January 1, 2004". 110 Stat. 3009–453.

Though these new provisions were not made law until the 104th Congress in 1996, they had been under debate for at least two previous Congresses. In the 103d Congress, several representatives spoke on the House floor regarding the purpose of preemption. Representative Castle of Delaware stated that

> State and Federal authorities will be able to sue furnishers of credit information that knowingly produce inaccurate information. Consumers will be protected without exposing legitimate businesses to excessive lawsuits.... This Federal preemption will allow businesses to comply with one law on credit reports rather than a myriad of State laws.

140 Cong. Rec. H9797–05, H9815 (1994). Representative Thomas of Wyoming expressed similar reasoning. *See id.* at H9811 ("We have compromised on the preemption issue so companies will not have to comply with a patchwork of State laws."). Preemption was "one of the toughest issues to resolve", *id.* at H9815 (statement of Rep. Castle), but the eight-year sunset of the preemption provision was "a product of a careful effort to balance industry's desire for nationwide uniformity with States' vital interest in protecting their citizens", *id.* at H9810 (statement of Rep. Kennedy). The eight-year preemption would "test the viability of a uniform national standard. If after 8 years the Federal law is not adequately protecting consumers, then I would expect States to step in once again and do the job." *Id.* "After 8 years, States will be able to enact tough-

law indicating, however, that California state officials indeed are authorized to enforce the excepted provision. Nor has any court expressly so stated. If state officials cannot enforce the excepted provision, it would make no sense for Congress to except it from preemption while at the same time eliminate private rights of action based upon it.

The same reasoning applies to Section 54A and its exception. If the Massachusetts Attorney General (or any other state official) can enforce Section 54A, then the logic of *Gibbs* and *Hasvold* holds. If not, it is absurd to conclude that Congress would have explicitly excepted it while not leaving an enforcement mechanism. This Court can find no authorization for the Massachusetts Attorney General or other state official to enforce Section 54A(a),[7] and there appears to be no reported cases involving official enforcement of Section 54A. At oral argument, however, both parties agreed that the Attorney General indeed could enforce Chapter 54A. *See* Oral Arguments 01/25/06, Tr. at 9–10. Upon

that representation by counsel, in conjunction with the legislative history and numerous court decisions contemplating only official enforcement, as well as the First Circuit's affirmance of *Gibbs*, this Court holds that Section 54A is preempted by the FCRA insofar as it provides for a private right of action. Those counts, therefore, will be dismissed.

**B. Negligence and Negligent Infliction of Emotional Distress**

 The Islams allege that Option One was negligent in its payment processing, collection activity, and reporting to credit agencies. This negligence resulted in "emotional and psychological harm, medical expenses, lost enjoyment of life and economic harm,"[8] Compl. §§ 30, 51, and, with regard to negligent infliction of emotional distress, resulted in "severe emotional distress manifested by objective symptomatology", Compl. § 42.

1. Preemption

 Before one even reaches the elements of the Islams' negligence claims,

149 Cong. Rec. E2512–02, E2518–19 (2003) (statement of Rep. Oxley). The California and Massachusetts exceptions, however, were left in place—again without explanation.

7. *See* Mass. Gen. Laws ch. 12, §§ 1–11L (defining the duties of the Attorney General); *cf.* Mass. Gen. Laws ch. 93, § 9 (providing for civil actions by the Massachusetts Attorney General for violations of Chapter 93, Sections 4–6); *id.* § 14H (imposing a duty on district attorneys to enforce violations of Chapter 93, Sections 14E–14K); *id.* ch. 93, § 88 (providing for the Massachusetts Attorney General to enforce violations of Chapter 93, Section 79); *id.* ch. 93A, § 4 (providing for the Massachusetts Attorney General to enforce violations of Chapter 93A, the Massachusetts Consumer Protection Act).

8. Option One argues that the Islams' negligence counts should be dismissed because the alleged damages are precluded by the economic loss doctrine. Def.'s Mem. in Supp. of

Mot. to Dismiss or to Strike Certain Allegations from the Compl. [Doc. No. 3] ("Def.'s Mem.") at 12–13. That doctrine holds that purely economic loss cannot be recovered in negligence absent physical injury. *Garweth Corp. v. Boston Edison Co.*, 415 Mass. 303, 305, 613 N.E.2d 92 (1993). Massachusetts has recognized exceptions to the doctrine, however, for actions alleging negligent misrepresentation, *Nota Constr. Corp. v. Keyes Assocs., Inc.*, 45 Mass.App.Ct. 15, 20, 694 N.E.2d 401 (1998), professional malpractice, *Frank Cooke Inc. v. Hurwitz*, 10 Mass.App.Ct. 99, 109, 406 N.E.2d 678 (1980), and for negligent breach of contractual duties, *Abrams v. Factory Mutual Liab. Ins. Co.*, 298 Mass. 141, 144, 10 N.E.2d 82 (1937). As explained in Part II.B.2, *infra*, the alleged negligence in this case occurred in the performance of the loan contract. The economic loss doctrine, therefore, does not apply. In any event, the Islams allege more than mere economic harm. Option One's invocation of the doctrine is inapt.

they must overcome more preemption problems. After all, Section 1681t(b)(1)(F) purports to preempt all state laws regarding the reporting of information to credit agencies. This would preempt that part of the Islams' state-law negligence claim based on Option One's inaccurate reports to credit agencies.[9]

The FCRA has another potentially relevant provision, however. Section 1681h(e) provides that

> no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against ... any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report[,] except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). This provision, by prohibiting certain state-law claims, impliedly allows others. How it is to be reconciled with the general preemption provision of Section 1681t(b) has vexed district courts nationwide since Section 1681t(b) was added to the code in 1996. *See* Pub.L. 104–208 (1996). Despite a decade of confusion, not one circuit court has yet provided guidance on the issue.

Courts have taken three basic approaches to reconciliation: "total" preemption, "temporal" preemption, and "statutory" preemption. *See Barnhill v. Bank of Am.,* 378 F.Supp.2d 696, 698–704 (D.S.C. 2005). The "total" preemption theory posits that Section 1681t(b), enacted after 1681h(e), impliedly repealed 1681h(e). *See Roybal v. Equifax,* No. CIV S 05–1207MCEKLM, 2005 WL 3536115, at *3–4 (E.D.Cal. Oct.19, 2005); *Hasvold v. First USA Bank, N.A.,* 194 F.Supp.2d 1228, 1238–39 (D.Wyo.2002); *Jaramillo v. Experian Info. Solutions, Inc.,* 155 F.Supp.2d 356, 361–62 (E.D.Pa.2001).

■■ Such an approach, however, runs afoul of several rules of statutory construction. Most importantly, the Supreme Court has stated that "repeals by implication are not favored." *Universal Interpretive Shuttle Corp. v. Washington Metro. Area Transit Comm'n,* 393 U.S. 186, 193, 89 S.Ct. 354, 21 L.Ed.2d 334 (1968). "There are two well-settled categories of repeals by implication: (1) Where provisions in the two acts are in irreconcilable conflict ...; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute...." *Posadas v. Nat'l City Bank,* 296 U.S. 497, 56 S.Ct. 349, 80 L.Ed. 351 (1936). The second category is clearly inapplicable here, and as this discussion will shortly indicate, Sections 1681t(b) and 1681h(e) are not in irreconcilable conflict. "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001).

Moreover, courts have widely acknowledged, *see, e.g., Gorman v. Wolpoff & Abramson, LLP,* 370 F.Supp.2d 1005, 1009 (N.D.Cal.2005); *Jeffery v. Trans Union, LLC,* 273 F.Supp.2d 725, 727 (E.D.Va. 2003); *Gordon v. Greenpoint Credit,* 266

---

**9.** It would, however, preempt only that aspect of the alleged negligence. Any negligence in the accounting, servicing, and collection of debt would not be preempted, though such claims may suffer other infirmities. *See infra* Part II.B.2.

F.Supp.2d 1007, 1012 (S.D.Iowa 2003), that Section 1681h(e) is a more specific preemption provision than is Section 1681t(b), *compare* 15 U.S.C. § 1681h(e) (preempting some state claims "in the nature of defamation, invasion of privacy, or negligence"), *with* 15 U.S.C. § 1681t(b) (preempting "the laws of any State").

■ Statutory canons of construction instruct that a more specific provision normally will control a more general one. *Edmond v. United States*, 520 U.S. 651, 657, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997); *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). It is Section 1681t(b), therefore, that should yield in the face of a conflict with Section 1681h(e), rather than the other way around.

Finally, and perhaps most convincing, the fact that Congress amended Section 1681h(e) in the same Act that it added Section 1681t(b) belies any argument that the latter was meant to repeal the former completely. *See* Pub.L. No. 104–208, 110 Stat. 3009–396, 3009–439 (1996); *Barnhill*, 378 F.Supp.2d at 700.[10] Indeed the 1996 amendment to Section 1681h(e) specifically *inserted* into its preemption exception anyone "who furnishes information"—the same group of individuals who are protected from state law by Section 1681t(b), added at the same time. The total preemption approach cannot be correct.

Some courts have sought reconciliation of the conflicting Sections with a novel "temporal" approach—applying them to different periods in time. These courts hold that Section 1681t(b) applies only *after* a furnisher receives notice from a

credit agency that the information is inaccurate, whereas Section 1681h(e) applies *before* such notice. *See Woltersdorf v. Pentagon Fed. Credit Union*, 320 F.Supp.2d 1222, 1223–27 (N.D.Ala.2004); *Bank One, N.A. v. Colley*, 294 F.Supp.2d 864, 868–69 (M.D.La.2003); *Vazquez–Garcia v. Trans Union De Puerto Rico*, 222 F.Supp.2d 150, 159–63 (D.P.R.2002); *Aklagi v. NationsCredit Fin. Servs. Corp.*, 196 F. Supp 2d. 1186, 1194–96 (D.Kan. 2002). This approach, however, is "strained at best." *Gordon*, 266 F.Supp.2d at 1013. It conflates the issue of preemption with the elements of a valid private cause of action under the FCRA. Recall that there is no private right of action against a furnisher of information under the FCRA until the consumer notifies a credit reporting agency of an inaccuracy in his credit report and the agency then informs the furnisher. *See supra* Part II.A & n. 2. This second notice triggers the duties of Section 1681s–2(b), which, if breached, are privately actionable. Courts employing the temporal approach use this second notice as well to trigger the total preemption of Section 1681t(b), terminating the force of Section 1681h(e) at that point.

The problem with this approach is that Section 1681t(b) *makes no distinction* between the duties imposed in Subsections 1681s–2(a) and (b)—state laws regarding both sets are preempted. 15 U.S.C. § 1681t(b)(1)(F) (preempting state laws regarding the subject matter of "section 1681s–2 of this title").[11] And though the duties of Section 1681s–2(b) are not triggered until notice, the duties in Section

---

**10.** To the extent that courts taking the total preemption approach may have based their decision on a contrary belief, their conclusions are weakened. *See, e.g., Hasvold*, 194 F.Supp.2d at 1238–39; *Jaramillo*, 155 F.Supp.2d at 361.

**11.** To the extent some courts have followed the temporal approach on the belief that Section 1681t(b) only applies to the duties of Section 1681s–2(b), their conclusions are weakened. *See, e.g., Woltersdorf*, 320 F.Supp.2d at 1225 n. 6.

1681s–2(a) are present *regardless* of notice. *See Gordon,* 266 F.Supp.2d at 1013. Indeed, some duties in Section 1681s–2(a) do not arise *until* notice.[12] *See* 15 U.S.C. § 1681s–2 (a)(8)(E). Such a distinction, therefore, is baseless. Finally, the temporal approach creates the perverse effect of providing willful and malicious infringers with *more* protection (absolute immunity) from lawsuits *after* notice that the information they provided was incorrect than·they had before such notice. *See Barnhill,* 378 F.Supp.2d at 702–03. The Court rules this "temporal" approach to reconciliation is likewise incompatible with the statutory language of the FCRA and its intent.

The more defensible approach is known as "statutory" preemption and posits that Section 1681t(b) is meant to preempt state *statutory* causes of action, whereas Section 1681h(e) is meant to preempt state *common-law* causes of action. *See, e.g., Alabran v. Capital One,* No. Civ.A. 3:04CV935, 2005 WL 3338663, at *5 (E.D.Va. Dec.8, 2005); *Watson v. Trans Union Credit Bureau,* No. Civ. 04–205–B–C, 2005 WL 995687, at *6–8 (D.Me. Apr.28, 2005); *Gorman,* 370 F.Supp.2d at 1009–10; *Barnhill,* 378 F.Supp.2d at 703–04; *Jeffery,* 273 F.Supp.2d at 727–28; *Gordon,* 266 F.Supp.2d at 1012–13; *Carlson v. Trans Union, LLC,* 259 F.Supp.2d 517, 520–22 (N.D.Tex.2003); *Dornhecker,* 99 F.Supp.2d at 930–31.

First, this approach allows the more specific provision to control the more general one, thus not offending that canon of statutory construction. *Barnhill,* 378 F.Supp.2d at 703; *Gordon,* 266 F.Supp.2d at 1013. More importantly though, it more neatly comports with the statutory language. In providing exceptions to its preemption provision, Section 1681t(b) names specific state *statutes,* whereas Section 1681h(e) excepts common-law *torts.* *See Barnhill,* 378 F.Supp.2d at 703; *Jeffery,* 273 F.Supp.2d at 728. The court in *Carlson* persuasively explains having such a distinction:

> It is clear that the substance of a claim under § 1681s–2 and a claim for[, e.g.,] defamation are significantly different. Under § 1681s–2, Plaintiff must show that Defendant … violated a duty, either willfully or negligently, to thoroughly investigate his claim to a consumer reporting agency that there was an inaccuracy in his credit report. Under[, e.g.,] Texas law, to prove a case of defamation, Plaintiff must show: (1) that

---

12. To be sure, the notice relevant to Section 1681 s–2(a) comes directly from the consumer, whereas the notice relevant to Section 1681 s–2(b) comes from a credit reporting agency—and this does matter in sustaining private rights of action under the FCRA. *See supra* note 2. It should be of little significance to a preemption analysis, however. Even though such a distinction may have some logical appeal in that it would cut off state rights of action at the point when federal ones are gained, given the desire for one national enforcement scheme, *see supra* note 6, Congress surely would not have wanted a state to be able to enact a law providing for a private right of action *only if* a consumer does *not* provide notice to a credit reporting agency. If anything, Congress wanted *no* private enforcement over the subject matter of the duties covered in Section 1681 s–2(a). *See supra* nn. 3 & 6 and accompanying text. For a state to provide otherwise would defeat the purpose of creating the enforcement rubric that Congress created. Congress *wanted* people to report inaccuracies to credit agencies. Congress *wanted* credit agencies to be the ones who notify furnishers of information of any problems. For whatever reasons, these are the steps Congress *wanted* consumers to take. And Congress provided a private right of action as an incentive for consumers to proceed in this manner. Congress's enforcement scheme would be wholly undercut if states could provide private rights of action to those consumers—and only those consumers—who did not follow the reporting mechanism of the FCRA.

the Defendant published a statement; (2) that the statement was defamatory; (3) and concerned the Plaintiff; (4) while acting with either negligence, if plaintiff is a private individual, or actual malice, if the plaintiff is a public figure, regarding the truth of the statement. While acts giving rise to the two causes of action are the same, the subject matter of the two claims [is] significantly different.

259 F.Supp.2d at 521–22. In other words, Section 1681s–2 and common-law duties protect different interests. As well, this interpretation would allow for state-law torts to serve as a backstop to the FCRA enforcement scheme, only permitting prosecution of the most egregious violations of civil society.[13]

Were this Court forced to reconcile Sections 1681t(b) and 1681h(e), this "statutory" approach to preemption would be the preferred method. Because the Islams allege sufficient malice to meet the standard of Section 1681h(e), their negligence claims thus would not be preempted. Upon a closer reading of Section 1681h(e), however, it becomes clear—at least in this case—that reconciliation is not necessary. Despite the contrary assumption in most of the cited cases, Sections 1681h(e) and 1681t(b) usually are not in conflict. The Court instead is persuaded by Chief Judge John Heyburn that Section 1681h(e) is not a preemption provision at all. *See Webb v. Bob Smith Chevrolet, Inc.,* No. Civ.A.3:04 CV 66 H, 2005 WL 2065237, at *4–5 (W.D.Ky. Aug.24, 2005); *McAnly v. Middleton & Reutlinger, P.S.C.,* 77 F.Supp.2d 810, 814 (W.D.Ky.1999). Rather, Section 1681h(e) is "a *quid pro quo* grant of protection for statutorily required disclosures." *McAnly,* 77 F.Supp.2d at 814.

"Section 1681h(e) suggests not that Congress has limited actions brought in all areas regulated by the FCRA but that defendants will have qualified immunity from actions based on information disclosed pursuant to certain provisions [Sections 1681g, 1681h, and 1681m] of the FCRA." *Webb,* 2005 WL 2065237, at *5. Though not controlling, the heading for the section—"Limitation of liability"—also indicates that this interpretation is correct. *See Kelly v. United States,* 924 F.2d 355, 360–61 (1st Cir.1991) (using section heading for guidance in statutory interpretation).

To understand this position, it is helpful to consider the state of the law prior to the enactment of Section 1681t(b), when only Section 1681h(e) existed. Consumers prior to 1996 could bring innumerable state-law claims against credit reporting agencies, users of credit reports, and furnishers of information. Such claims were bounded only by what state law actually provided and the "[l]imitation of liability" provided by Section 1681h(e): If the consumer brought a state-law claim "in the nature of defamation, invasion of privacy, or negligence", when the specified entities disclosed information pursuant to three specific Sections, that state-law claim was viable only if the information was furnished maliciously or with a willful intent to injure. All other state-law claims were unrestricted.

Section 1681h(e) was and is not implicated unless the cause of action is "based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the

---

**13.** That is, only if state common law itself would impose such duties. *See infra* Part

II.B.2.

report...." 15 U.S.C. § 1681h(e); *see* *McAnly*, 77 F.Supp.2d at 814. The existence of Section 1681t(b) does not change this. Sections 1681g and 1681h deal with disclosure of information by credit reporting agencies. Section 1681m and the remaining portion of the quoted language deal with disclosure of information by users of information who then take adverse action against consumers based on that information. Option One is not a credit reporting agency and here is not sued in its capacity as a user of credit reports. Moreover, it is not alleged to have taken any adverse action against the Islams *based on* information in the Islams' credit report; Option One, rather, is the alleged furnisher of the incorrect information. Section 1681h(e) simply is not applicable to this case. Only Section 1681t(b) applies here.

It may be that in those narrow instances where Section 1681h(e) is implicated, it would need to be reconciled with Section 1681t(b) by employing one of the methods analyzed above. This is not such an instance. Therefore, Section 1681t(b) is the only "preemption" provision operative as to these negligence claims. Its explicit terms preempt all state-law claims related to the subject matter of Section 1681s–2— responsibilities of furnishers of information. *Parisi v. Chater*, 69 F.3d 614, 617 (1st Cir.1995) ("[G]ive effect to the statute's plain meaning unless it would produce an absurd result or one manifestly at odds with the statute's intended effect." (internal quotation marks omitted)). The unconflicted statute—as well as the legisla-

tive intent, *see supra* Part II.B.1—is clear. As a result, the Islams' negligence claims are preempted to the extent they rely on Option One's alleged negligence in the reporting of the Islams' loan repayment to credit agencies.

This Court recognizes that it makes this ruling in the face of numerous federal court decisions that, by implication, perceive a conflict between Sections 1681h(e) and 1681t (b).[14] In this Court's view, however, no court satisfactorily has explained the exact nature of that conflict. That both Sections merely mention state-law claims cannot be sufficient to set them at war. The Court, therefore, thinks it quixotic to tilt at these windmills of supposed statutory conflict. Perhaps this be error. If so, might some circuit court shed light on the issue after all these years?

### 2. Duty

■ At this point the only aspects of the Islams' negligence claims that survive preemption are those aspects relating to alleged negligent accounting and collection of the mortgage debt. The Islams may have further problems, however. Option One argues that, as matter of law, Option One had no *legal* duties to the Islams to process their payments accurately, not to seek payment from them at all, or not to seek payment in a certain manner. Def.'s Mem. at 10–11. It is hornbook law that the first element of any negligence claim is that the defendant owe a duty of care to the particular plaintiff.[15] *Glidden v. Mag-*

---

14. *Gibbs*, which was affirmed by the First Circuit, noted the supposed conflict but did not attempt to reconcile it. *See* 366 F.Supp.2d at 12. The case was decided on another ground. *Id.* at 12–13. Thus *Gibbs* is not binding or even instructive on this issue.

15. Massachusetts law also requires that a legal duty undergird a claim of negligent inflic-

tion of emotional distress. *See Payton v. Abbott Labs*, 386 Mass. 540, 557, 437 N.E.2d 171 (1982). The particular damages available from such an action—"physical harm manifested by objective symptomatology", *id.* at 557, 437 N.E.2d 171—are, in effect, merely part of the damages calculation in a normal negligence case. Therefore, Mr. Islam's negligent infliction of emotional distress claim

*lio,* 430 Mass. 694, 697, 722 N.E.2d 971 (2000). Option One argues that it has "scoured the Massachusetts case law" and can find no case in which "a creditor owes a duty such as that claimed by the Islams." Def.'s Mem. at 11. The Islams do not help the Court by joining this debate and defending the existence of a duty. *See* Pls.' Opp'n to Def.'s Mot. to Dismiss the Compl. and to Strike Certain Allegations from the Compl. [Doc. No. 7] ("Pls.' Opp'n") at 18–19. At oral argument, the best that counsel for the Islams could do was to say that every Massachusetts contract contains an implied duty of good faith and fair dealing. Oral Arguments 01/25/06, Tr. at 11. Though this is surely true, *Ayash v. Dana–Farber Cancer Inst.,* 443 Mass. 367, 385, 822 N.E.2d 667 (2005), the breach of such a duty gives rise to a contract action, not one for negligence. *See Price v. United Parcel Serv., Inc.,* 601 F.Supp. 20, 23 & n. 1 (D.Mass.1984) (Keeton, J.).

▮ Thus, this Court embarks in search of a duty. It is helpful to start with the observation that "a bank's relationship to its customers [is] simply [ ] one of creditor and debtor ..."—an arm's-length, business relationship. *Adams Co-operative Bank v. Greenberg (In re Greenberg),* 212 B.R. 422, 428 (Bankr.D.Mass.1997). No *fiduciary* duty is owed. *Pimental v. Wachovia Mortgage Corp.,* 411 F.Supp.2d 32, 39 (D.Mass.2006); *Superior Glass Co., Inc. v. First Bristol County Nat'l Bank,* 380 Mass. 829, 832, 406 N.E.2d 672 (1980). This does not help too much, however, because it does not necessarily mean that no duty is owed. *Colorado Capital v. Owens,* 227 F.R.D. 181, 189 (E.D.N.Y.2005) ("No such 'special relationship' is required to establish a duty of care in a negligence action.").

[T]he problem of duty is as broad as the whole law of negligence, and ... no universal test for it ever has been formulated. It is a shorthand statement of a conclusion, rather than an aid to analysis in itself. ... '[D]uty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.

William L. Prosser & W. Page Keeton, *Prosser & Keeton on Torts,* § 53, at 357–58 (5th ed.1984); *see also Colorado Capital,* 227 F.R.D. at 188–89 ("The general concept of 'duty' as a necessary element of a negligence action has been defined as a relationship between ... two parties such that society imposes an obligation on one to protect the other from an unreasonable risk of harm.... Ultimately, whether to impose a duty of care rests on a judicial determination that the social importance of protecting the plaintiff's interest outweighs the importance of immunizing the defendant from extended liability." (internal quotation marks and citations omitted, first alteration in original)). The real question is thus: Did Option One owe a duty to the Islams, such that if Option One negligently performed, the Islams *ought* have a negligence claim against it?

Courts often look to statutes for guidance in negligence actions. This guidance, however, typically relates only to the appropriate standard of care, not the imposition of duties. *See Berish v. Bornstein,* 437 Mass. 252, 273, 770 N.E.2d 961 (2002) ("Although violations of a statute or regulations do not constitute negligence per se, they may provide evidence of negligence."); *Follansbee v. Ohse,* 293 Mass. 48, 52, 199 N.E. 387 (1936); Prosser & Keeton, *supra,* at § 36, at 220–33. Moreover,

(Count V) will be merged with his general negligence claim (Count I), to the extent that claim survives this motion to dismiss.

this principle appears to be limited in application to penal statutes, *see Adamian v. Three Sons, Inc.,* 353 Mass. 498, 499, 233 N.E.2d 18 (1968) (Wilkins, C.J.); *Baggs v. Hirschfield,* 293 Mass. 1, 3, 199 N.E. 136 (1935); *Falk v. Finkelman,* 268 Mass. 524, 527, 168 N.E. 89 (1929), or, at most, statutes in the nature of safety standards, *see LaClair v. Silberline Mfg. Co.,* 379 Mass. 21, 28, 393 N.E.2d 867 (1979); *Perry v. Medeiros,* 369 Mass. 836, 840, 343 N.E.2d 859 (1976).

Yet, "[o]ur law, both civil and criminal, imposes on people a *duty* to act reasonably", *Commonwealth v. Levesque,* 436 Mass. 443, 449, 766 N.E.2d 50 (2002) (emphasis added), and the general negligence rules derived from statutes, discussed above, are based on "the general belief that the *duties* imposed by legislatively-prescribed conduct are normally reasonable ones to bear", *LaClair,* 379 Mass. at 28, 393 N.E.2d 867 (emphasis added). These general phrases might be read to support the creation of an extra-statutory negligence duty based on any statute. Also true, though, is that statutes "create[ ] a new civil cause of action only when [it] appears by express terms or by clear implication to have been the legislative intent." *Richmond v. Warren Inst. for Sav.,* 307 Mass. 483, 485, 30 N.E.2d 407 (1940); *see also St. Germaine v. Pendergast,* 411 Mass. 615, 620, 584 N.E.2d 611 (1992).

The Court is hesitant to find a negligence duty based on the duties imposed by the Massachusetts statutory law relevant to the remaining possible duties.[16] *See* Mass. Gen. Laws ch. 93, § 49 (debt collection); *id.* ch. 93A, § 2 (unfair trade practices). Neither of these is a penal or safety statute, and each provides its own enforcement mechanism. To create a common-law negligence action based on these statutes would be to graft an unwritten remedy onto their enforcement scheme. This the Court is unprepared to do. If a duty exists, it must originate elsewhere.

It may help to look more closely at the specific breaches alleged in this case. Recall that for the Islams to allege a viable negligence claim, the Court must conclude that Option One had a duty to the Islams correctly to (1) account for a mortgage or (2) collect a debt in a certain manner. These duties sound in contract. Neither initially implicates negligence. Judge Keeton, however, has explained that

[t]he duties of conduct enforced in tort actions may or may not be based in part upon manifested promises, and the interests protected may or may not arise from relationships that involve contracts. A contract for services may create a relationship between parties by reason of which the law recognizes a duty of reasonable care in performance that will support a tort action as well as an action for breach of contract. Massachusetts precedents establish the availability of a tort remedy in such circumstances.

*Redgrave v. Boston Symphony Orchestra,* 557 F.Supp. 230, 237 (D.Mass.1983) (Keeton, J.) (citing cases). "If a party must rely on the duties created in the contract, or if the negligence claim alleges the breach of the very duties encompassed in a contract, the action is in substance an action on the contract. However, a claim sounds in tort only if a party's conduct would give rise to liability independent of the fact that a contract exists between the parties." *UMLIC VP, LLC v. T & M Sales & Envtl. Sys., Inc.,* 176 S.W.3d 595, 613 (Tex.App.2005) (internal quotation marks and citations omitted); *see also Sor-*

**16.** Statutes relevant to the alleged negligence in Option One's credit reporting are no longer at issue, as the state-law claims based thereon are preempted. *See supra,* Part II.B.1.

*enson v. H & R Block, Inc.*, No. CIV.A.99–10268–DPW, 2002 WL 31194868, at *10 n. 9 (D.Mass. Aug.27, 2002) (Woodlock, J.). There is no indication that the mortgage contract between Option One and the Islams specifically provided for such duties as are alleged to have been breached here.

Understanding that it is possible for a contractual debtor-creditor relationship nevertheless to give rise to a negligence action, the question remains whether there is, in fact, a predicate duty in these circumstances. The Court's own search has found scant authority, even less from Massachusetts, and much of it conflicting. In *Johnson v. CitiMortgage, Inc.*, the court stated:

> [T]he law imposes upon persons of professional standing performing medical, architectural, engineering, and those performing other and like skilled services, pursuant to their contracts made with their clients, an obligation to exercise a reasonable degree of care, skill and ability, such as is ordinarily exercised under similar conditions and like circumstances by persons employed in the same or similar professions. This is a duty apart from any express contractual obligation....
>
> To state it otherwise, Defendant undertook the performance of servicing Plaintiff's mortgage loan, which, if negligently performed, would obviously cause loss to the Plaintiff. The Court finds, therefore, that negligence is a cognizable claim under the facts alleged.

351 F.Supp.2d 1368, 1379 (N.D.Ga.2004) (citations omitted) (applying Georgia law to allegations that defendant had "negligently serviced the subject loan, in breach of its duty to the Plaintiff to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records ..."). The court in *Colorado Capital* agreed:

> [A] duty should be recognized. There is nothing contrary to public policy that precludes the Court from holding credit card issuers to a duty of care in the collection of their debts.... For example, surely credit card issuers should not be able to escape liability if they hired a debt collection firm that used hit-men or tortuous means to collect debt from their consumers.... Thus, the imposition of a duty of care in this context furthers the legislative and societal judgment that unfair and harmful debt collection practices in this country are unacceptable.

227 F.R.D. at 189; *see also Dubai Islamic Bank v. Citibank, N.A.*, 126 F.Supp.2d 659, 667 (S.D.N.Y.2000) (citing *King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir.1997)); *Schock v. United States*, 56 F.Supp.2d 185, 191 (D.R.I.1999) (stating that, according to Rhode Island law, "the debtor-creditor relationship can create a contractual duty that becomes also a duty imposed by law", while also noting that such a rule "sails against the main current of jurisprudence"); *Bank Brussels Lambert, S.A. v. Intermetals Corp.*, 779 F.Supp. 741, 747 (S.D.N.Y.1991) ("[I]t is true and without question that [defendant bank] had a duty to exercise reasonable skill and care in carrying out its activities for its customer....").

In a different context, though, Massachusetts law does not appear to recognize bankers or creditors as "professionals"— that category of people whose contractual relationships create extra-contractual duties. In setting out rules for accrual and limitations periods for contract and tort actions for "malpractice"—negligence actions against professionals—Massachusetts law refers to attorneys, public accountants, sheriffs and deputies, physi-

cians, surgeons, dentists, optometrists, hospitals, and sanitoria. *See* Mass. Gen. Laws ch. 260, § 4. Nowhere on the list are bankers or creditors. Cf. *Sorenson*, 2002 WL 31194868, at *9–10 (finding no tort duty for tax return preparers). Again in another context, professionals have been distinguished as "deal[ing] in somewhat inexact sciences and [being] continually called upon to exercise their skilled judgment in order to anticipate and provide for random factors which are incapable of precise measurement." *Klein v. Catalano*, 386 Mass. 701, 718, 437 N.E.2d 514 (1982). If this is likewise to be the standard for creating extra-contractual tort duties, at first blush it appears questionable whether bankers or creditors would meet the test.

Yet, negligence in the context of debt collection has been recognized in Massachusetts since at least 1971. *See George v. Jordan Marsh Co.*, 359 Mass. 244, 268 N.E.2d 915 (1971). Its pedigree in other states is several decades older. *See* Howard J. Alperin & Roland F. Chase, *Massachusetts Practice Series: Consumer Law*, § 20:106 nn. 11–17 (2d ed. current through 2006 Update) [hereinafter, "Massachusetts Practice Series"] (citing cases). Though these cases involve negligent infliction of emotional distress, the fact that such a cause of action exists, which itself requires that there be a duty, *see supra* note 15, indicates that such a duty may exist in Massachusetts for bankers or creditors.

To summarize and conclude the discussion, for the Islams' negligence claims to be viable as matter of Massachusetts law, the Court must find that a duty exists in these circumstances. Given the uncertainty surrounding the existence of a negligence duty in Massachusetts law in the context of debt collection by a secured creditor bank, it is prudent at this stage to deny Option One's motion to dismiss the Islam's negligence claims. Rather, the case should move forward. If, after discovery and trial, there is a verdict in favor of the Islams, the Court may consider it appropriate to certify this question—and the fully developed record—to the Supreme Judicial Court of Massachusetts pursuant to its Rule 1:03 for a definitive answer.

### C. Massachusetts General Laws Chapter 93, Section 49 and Code of Massachusetts Regulations Title 940, Section 7.07

■■■ The Islams also bring a claim under Chapter 93, Section 49 of the Massachusetts General Laws and Title 940, Section 7.07 of the Code of Massachusetts Regulations for Option One's harassing debt collection measures. Chapter 93, Section 49 provides that

> no one who is a creditor . . . of a natural person present or residing in Massachusetts who has incurred a debt primarily for personal, family or household purposes shall collect or attempt to collect such debt in an unfair, deceptive or unreasonable manner.

> For the purposes of this section, such collection or attempt to collect shall be deemed unfair, deceptive or unreasonable if:

> . . .

> (c) The creditor communicates with the alleged debtor *in such a manner as to harass or embarrass the debtor*, including, but not limited to communication at an unreasonable hour, with unreasonable frequency, by threats of violence, *by use of offensive language*, or by threats of any action which the creditor in the usual course of business does not in fact take.

Mass. Gen. Laws ch. 93, § 49 (emphasis added). Further, Title 940, Section 7.07 of the Code of Massachusetts Regulations provides that

[i]t shall constitute a deceptive act or practice to engage in any of the following practices:

. . .

(2) Any knowingly false or misleading representation in any communication as to the character, extent or amount of the debt. . . .

Mass. Regs.Code tit. 940, § 7.07. The Islams allege violations of these provisions in Counts II and VIII and Counts IV and X, respectively.

With regard to Counts IV and X, Option One points out, Def.'s Mem. at 5–6, and the Islams concede, Pls.' Opp'n at 5, that Title 940, Section 7.03 excludes from the meaning of "debt", for purposes of Chapter 7, "money which is owing . . . as a result of a loan secured by a first mortgage on real property, or in an amount in excess of $25,000. . . ." Mass. Regs.Code tit. 940, § 7.03. This unquestionably would remove the Islams' note from the protections of that provision. Thus, Counts IV and X will be dismissed.

Option One also claims that the Islams fail to allege sufficient facts to constitute a violation of Chapter 93, Section 49. Def.'s Mem. at 6–8. Option One says that it contacted the Islams only once, that all other calls were initiated my Mr. Islam, that there is no allegation that the single call was at an unreasonable hour, and that Option One corrected the accounting error as soon as it was brought to its attention. Def.'s Mem. at 7. This may all be true, but the Islams also alleged that Option One's senior counsel used a racial epithet during discussions with Mr. Islam. This falls squarely within Section 49(c)'s "use of offensive language" prohibition. Though the Islams have pleaded that this epithet was uttered after Option One's collection efforts had ceased, see Compl. ¶¶ 20–24, taking all inferences in favor of the Islams, this statement may indicate the tenor of prior collection efforts.

The Islams have thus alleged sufficient facts to constitute a violation of Section 49.[17] Section 49 does not itself contain a private right of action, however. Instead, it states that the consequence of a violation is that it "shall constitute an unfair or deceptive act or practice under the provisions of chapter ninety-three A." Mass. Gen. Laws ch. 93, § 49. Counts II and VIII, therefore, will be merged with Counts VI and XI, respectively—the Islams' Chapter 93A claims. See infra Part II.D.

### D. Massachusetts General Laws Chapter 93A

The Islams lastly allege that Option One violated Chapter 93A, Section 2 of the Massachusetts General Laws by violating Chapter 93, Section 49 and Chapter 93, Section 54A of the Massachusetts General Laws and Title 940, Section 7.07 of the Code of Massachusetts Regulations. Chapter 93A, Section 2 merely states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are

---

17. Option One moves that several inflammatory paragraphs be stricken from the complaint pursuant to Federal Rule of Civil Procedure 12(f). Def.'s Mem. at 16–17. Allegations are not properly stricken from a complaint merely because they sound scandalous. Only if such statements are both scandalous and irrelevant to the lawsuit or included for improper purposes are they properly stricken—not if they are relevant to the cause of action. See 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (3d ed.2004). As described, these allegations are at least relevant to the Islams' Section 49 counts, and, therefore, will not be stricken. All would do well to remember, however, that these are only unproven allegations. Nothing more.

hereby declared unlawful." Mass. Gen. Laws ch. 93A, § 2(a). Though those words are inherently ambiguous, even Option One cites a case holding that statutory concepts of unfairness are sufficient to sustain a chapter 93A claim. Def.'s Mem. at 14 (citing *Damon v. Sun Co.*, 87 F.3d 1467 (1st Cir.1996)). As explained above, *see supra* Part II.C, the Islams have alleged sufficient facts at least to sustain a Chapter 93, Section 49 violation.

To the extent the Islams rely on Title 940, Section 7.07 of the Code of Massachusetts Regulations, however, their Chapter 93A claims will be dismissed. *See supra* Part II.C. Also, to the extent the Islams rely on Chapter 54A(a), their Chapter 93A claims are preempted and, thus, will be dismissed. *See supra* Part II.A. Likewise, to the extent the Islams rely Option One's communications with credit agencies, their Chapter 93A claim is preempted and thus will be dismissed. *See supra* Part II.B.1. That part of the Islams' Chapter 93A claim, however, which rests on Option One's alleged acts relating to the accounting and collection of the Islams' note are not dismissed. So limited, the Islams' Chapter 93A claim is not an "end run around both the state and federal statutory schemes", as argued by counsel for Option One. *See* Oral Arguments 01/25/06, Tr. at 13.

### III. CONCLUSION

For the reasons expressed in the foregoing pages, Option One's Motion to Dismiss [Doc. No. 2] is ALLOWED in part and DENIED in part. The Islams' Chapter 54A(a) claims (Counts IV and X) are DISMISSED as preempted. The negligence claims (Counts I and VII) survive the motion to dismiss to the extent indicated above, *see supra* Part II.B, subject to possible certification to the Supreme Judicial Court upon a verdict favorable to the Is-

lams. In all other respects, the negligence claims are DISMISSED. The negligent infliction of emotional distress claim (Count V) is merged with Nurul Islam's negligence claim (Count I) and is limited to the same extent as that claim. The motion to strike certain allegations from the complaint is DENIED. The claims based on the Code of Massachusetts Regulations Title 940, Section 7.02(2) (Counts III and IX) are DISMISSED. The claims based on Massachusetts General Laws Chapter 93, Section 49 (Counts II and VIII) are merged with those based on Massachusetts General Laws Chapter 93A (Counts VI and XI), respectively, which survive to the extent indicated above. *See supra* Part II.D.

The action will proceed to discovery in accordance with the parties' Joint Statement [Doc. No. 12].

SO ORDERED.