**Stephanie CATANZARO, Plaintiff,**

v.

**EXPERIAN INFORMATION SOLUTIONS, INC., Trans Union, LLC and Verizon New England, Inc., Defendants.**

**Civil Action No. 09–10555–NMG.**

United States District Court,
D. Massachusetts.

Dec. 1, 2009.

Kenneth D. Quat, Quat Law Offices, Cambridge, MA, for Plaintiff.

James R. Dyer, Tucker, Heifetz & Saltzman, LLP, Mardic A. Marashian, Bonin & Marashian, Boston, MA, Bruce S. Luckman, Kogan, Trichon & Wertheimer, P.C., Philadelphia, PA, Michael D. Silberfarb, Jones Day, New York, NY, Margaret L. Weir, Law Offices of Margaret L. Weir, Salem, MA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

This action arises from two consolidated cases brought by plaintiff Stephanie Ca-

tanzaro ("Catanzaro") against defendants Verizon New England, Inc. ("Verizon"), Trans Union, LLC ("Trans Union") and Experian Informations Solutions, Inc. ("Experian") seeking injunctive relief and damages for defendants' alleged misconduct in furnishing and reporting erroneous credit information. Currently before the Court is Verizon's motion to dismiss Counts I, V, VI, VII and VIII of the complaints.

## I. *Background*

On April 10, 2009, 21 year-old Stephanie Catanzaro brought suit against Verizon, a furnisher of consumer information, and Trans Union, a consumer reporting agency, alleging that, with respect to her, the defendants furnished and reported erroneous credit information. On that same day, Catanzaro filed a nearly identical suit against Verizon and Experian, another consumer reporting agency. The two suits have since been consolidated pursuant to Fed.R.Civ.P. 42(a). In the complaints, Catanzaro alleges that all three defendants violated the Fair Credit Reporting Act ("FCRA") and its Massachusetts counterpart and that Verizon also violated the Fair Debt Collection Practices Act ("FDCPA").

Catanzaro maintains that on August 28, 2008, Trans Union issued a credit report which listed two Verizon accounts in her name as delinquent and in collection. In or about September, 2008, Catanzaro received notice that Verizon had also reported the delinquent accounts to Experian. Catanzaro denies that the accounts belong to her and believes she is the victim of identity theft. At Catanzaro's request, her father called Trans Union, Experian and Verizon to inform them that the accounts in question did not belong to Catanzaro. In response, Verizon advised that it would not conduct an investigation of the matter unless Catanzaro filed an identity theft report with a local law enforcement agency. Both Trans Union and Experian informed Catanzaro that they had conducted investigations and verified that the information regarding the two accounts was accurate.

On October 22, 2008, Catanzaro sent Verizon a letter disputing that the accounts were hers and explaining that, at the time the accounts were opened, she was a minor and did not have the legal capacity to open them. On December 18, 2008, Catanzaro sent similar letters to both Trans Union and Experian disputing the accounts and enclosing documentation proving she was a minor at the time they were opened. Both Experian and Trans Union responded that they had verified the accounts and would make no changes to Catanzaro's credit file.

Catanzaro's First Amended Complaint in *Catanzaro v. Experian et al.* ("Complaint # 1") alleges six counts against Verizon: 1) violation of the FCRA, 15 U.S.C. § 1681s–2(b)(1) (Count I), 2) violation of the FDCPA (Count II), 3) violation of M.G.L. c. 93, § 54A(a), (f) and (c) (Counts V, VI and VII) and 4) violation of M.G.L. c. 93A, § 2 (Count VIII). Complaint # 1 also alleges four counts against Experian: violation of the FCRA (Counts III and IV) and violation of M.G.L. c. 93, §§ 58(h) and (a) (Counts IX and X). The First Amended Complaint in the related (but now consolidated) case *Catanzaro v. Trans Union et al.* ("Complaint # 2"), alleges the same six counts against Verizon and four additional counts against Trans Union: violation of the FCRA (Counts III and IV) and violation M.G.L. c. 93, §§ 58(h) and (a) (Counts IX and X).

Now pending before the Court is Verizon's motion to dismiss Counts I, V, VI, VII and VIII of both complaints.

## II. *Analysis*

### A. Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.,* 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd,* 248 F.3d 1127 (1st Cir.2000). Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir.2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *See Nollet,* 83 F.Supp.2d at 208.

Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not, however, applicable to legal conclusions. *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Threadbare recitals of the legal elements, supported by mere conclusory statements, do not suffice to state a cause of action. *Id.* Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. *Id.* at 1950.

### B. Application

#### 1. Count I: Fair Credit Reporting Act ("FCRA")

In Count I of both complaints, Catanzaro alleges that Verizon violated the FCRA, 15 U.S.C. § 1681s–2(b)(1), by failing to conduct reasonable investigations of her dispute upon notification by Trans Union and Experian. Section 1681s–2(b)(1) provides, in relevant part,

> After receiving notice ... of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the [information furnisher] shall—A) conduct an investigation with respect to the disputed information [and] B) review all relevant information provided by the consumer reporting agency ...

15 U.S.C. § 1681s–2(b)(1). Verizon contends that Count I should be dismissed because the plaintiff does not allege in her complaints that Trans Union or Experian notified Verizon that the credit information was disputed.

█ Verizon correctly notes that notification by a consumer reporting agency to the information furnisher is a prerequisite for liability under § 1681s–2(b)(1). *See Islam v. Option One Mortgage Corp.,* 432 F.Supp.2d 181, 191 (D.Mass.2006) (finding no private right of action against an information furnisher unless the credit agency informs the furnisher of an inaccuracy in the credit report); *Gibbs v. SLM Corporation,* 336 F.Supp.2d 1, 11 (D.Mass.2004) (holding that the FCRA "provides a private cause of action only if the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information was disputed").

Although Count I of each complaint alleges that Verizon violated the FCRA by "failing to conduct reasonable investigations of plaintiff's disputes upon notification by [Experian/Trans Union]," nowhere in the factual allegations does the plaintiff state that either Experian or Trans Union notified Verizon that Catanzaro's account was in dispute. Because notification by

the consumer reporting agencies is an essential element of the plaintiff's FCRA claim, the Court finds that the plaintiff's First Amended Complaints, as written, fail to state a claim under 15 U.S.C. § 1681s–2(b)(1). *See Gibbs*, 336 F.Supp.2d at 12 (dismissing FCRA claim where plaintiff made no allegations that the consumer reporting agency notified the information furnisher of a dispute).

Accordingly, the Court will allow Verizon's motion to dismiss Count I. It will do so, however, without prejudice to plaintiff's right to file a second amended complaint incorporating allegations of notice by the consumer reporting agencies to Verizon, if she can make such a claim.

### 2. State Law Claims & Preemption (Counts V, VI, VII and VIII)

■ Verizon also moves to dismiss the plaintiff's state law claims (Count V through VIII of both complaints) on the grounds that they are preempted by the FCRA.

#### a. Count V: M.G.L. c. 93, § 54A(a)

Section 54A(a) of Chapter 93 of the Massachusetts General Laws requires information furnishers such as Verizon to

> follow reasonable procedures to ensure that the information reported to a consumer reporting agency is accurate and complete [and prohibits persons from providing] information to a consumer reporting agency [if they know or have] reasonable cause to believe such information is not accurate or complete.

M.G.L. c. 93, § 54A(a).

In order to create a uniform national standard for credit reporting, a 1996 amendment to the FCRA added a provision expressly preempting all state laws in the areas covered by 15 U.S.C. § 1681s–2:

> No requirement or prohibition may be imposed under the laws of any State—
>
> 1) with respect to any subject matter regulated under … section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies.

15 U.S.C. § 1681t(b)(1)(F). However, § 54A(a) is one of two state statutory provisions that is expressly excluded from the FCRA's preemption provision. *Id.* ("… except that this paragraph shall not apply with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws").

Thus, at first glance, the express exclusion of § 54A(a) from the requirements of the FCRA appears to save Catanzaro's claims from preemption. However, there is another wrinkle in the analysis. Although the FCRA exempts § 54A(a) from its preemptive reach, it includes no such exemption for § 54A(g), the Massachusetts statutory provision that creates a private cause of action for violations of the related state statute.[1] Accordingly, in order for Catanzaro to bring a civil action to enforce privately Verizon's alleged violation of § 54A(a), the exception to preemption must also apply to § 54A(g).

The logical disparity between the decision of Congress to exempt from preemption the provision of § 54A creating a duty but not the corresponding provision creating liability has puzzled both judges and commentators. Some sessions of this Court have found the absence of express language exempting § 54A(g) from the FCRA's preemption provision to be fatal. *See Leet v. Cellco P'ship*, 480 F.Supp.2d 422, 433 (D.Mass.2007); *Gibbs*, 336 F.Supp.2d at 13.

---

**1.** Section 54A(g) provides that any "person who furnishes information to a consumer reporting agency shall be liable for failure to comply with the provisions of this section."

However, other sessions of this Court have expressed concern that such a result presents a potential anomaly. For example, in the *Islam* case, Judge Young reasoned that if state officials can enforce § 54A, preemption of the statute's private right of action would be consistent with congressional intent to have information furnishers regulated exclusively by governmental agencies. 432 F.Supp.2d at 187. If, on the other hand, state officials do not have the power to enforce § 54A, "it would be absurd to conclude that Congress intended to have explicitly excepted it while not leaving an enforcement mechanism." *Id.* Although Judge Young ultimately concluded that § 54A was preempted by the FCRA insofar as it provides for a private right of action, that ruling was specifically premised on the parties' representations at oral argument that the Attorney General possessed the necessary authority to enforce § 54A. *See id.* at 189. Here, however, because the parties have made no such representation, the ruling in *Islam* is not controlling. Absent any indication that the Massachusetts Attorney General or any other state official possesses the requisite authority to enforce § 54A, the Court declines to foreclose the possibility of private enforcement of the statute.

■ A plain meaning interpretation of § 1681t(b)(1)(F) (of the FCRA), which preempts all state "requirement[s] or prohibition[s] with respect to any subject matter regulated under 1681s–2," also supports the finding that § 54A(g) (of the state statute) is not preempted by the FCRA. Although the "subject matter regulated under 1681s–2" is broad in scope, § 1681t(b)(1)(F) preempts only those state laws that constitute "requirements" or "prohibitions." Section 54A(g) of the Massachusetts statute is not a "requirement" or a "prohibition," but simply a mechanism allowing private litigants to enforce a state

standard for credit reporting that Congress deliberately chose not to preempt. Moreover, because § 54A(g) does not directly regulate the conduct of credit reporting agencies and information furnishers, it does not conflict with the FCRA's goal of creating a uniform national credit reporting standard. Thus, the Court finds that the plaintiff's claim under § 54A(a) is not preempted by the FCRA.

### b. Count VI & VII: M.G.L. c. 93, §§ 54A(c) & (f)

■ In Count VI of both complaints, the plaintiff alleges that Verizon violated M.G.L. c. 93, § 54A(f) by failing 1) to review relevant information submitted by Trans Union and Experian and 2) to complete reasonable investigations of the dispute. Plaintiff alleges in Count VII that Verizon violated § 54A(c) by failing to report to Trans Union and Experian that the accounts in question were subject to a continuing bona fide dispute. Verizon contends that Counts VI and VII should be dismissed because they are preempted by the FCRA. The plaintiff does not oppose Verizon's motion in that respect.

As both parties acknowledge, §§ 54A(f) and (c) fall squarely within the FCRA's preemption of state "requirements or prohibitions" relating to the "responsibilities of persons who furnish information to consumer reporting agencies," and, unlike § 54A(a), §§ 54A(c) and (f) are not expressly exempted from preemption by § 1681t(b)(1)(F). Accordingly, the Court finds that Counts VI and VII of the Complaint are preempted.

### c. Count VIII: M.G.L. c. 93A

■ The Massachusetts Consumer Protection Act (M.G.L. c. 93A) permits a person who has been injured by another person's use or employment of any "practice declared to be unlawful by section two [of Chapter 93A] or any rule or regulation

issued thereunder" to bring an action for damages and equitable relief. Section Two declares unlawful any "unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. c. 93A, § 2. Catanzaro alleges that Verizon's conduct was unfair and deceptive in violation of that statute.

Verizon responds that Catanzaro's claim is preempted by the FCRA because it alleges unfair or deceptive practices that directly "relat[e] to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). Catanzaro, on the other hand, insists that her Chapter 93A claim survives preemption because she is not invoking it to impose any additional "requirement or prohibition" on Verizon, but merely as a supplemental remedy for her federal and non-preempted state law claims.

Catanzaro's argument is unpersuasive. The "unlawful conduct" that Catanzaro alleges in Count VIII, including reporting inaccurate credit information, failing to investigate or report credit information as disputed and requiring a police report as a condition of investigating inaccurate information, constitutes precisely the kind of conduct that Congress intended to regulate under § 1681s–2. *See Leet,* 480 F.Supp.2d at 434 (holding that 93A qualifies as a "requirement" imposed by state law and directly relates to the "subject matter" of § 1681s–2). Accordingly, because the Court will not sanction the use of Chapter 93A as a end run around state and federal statutory schemes, it finds that plaintiff's Chapter 93A claims are preempted.

### ORDER

In accordance with the foregoing, Defendant's motion to dismiss (Docket No. 10) is

1) with respect to Counts VI, VII and VIII, **ALLOWED,**

2) with respect to Count I, **ALLOWED** without prejudice to plaintiff's filing of a second amended complaint, but

3) with respect to Count V, **DENIED.**

So ordered.